# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Virginia Passenger & Power Co. & Another v. Common-
WEALTH.

March 9, 1905.

Absent, Buchanan, J.*

1. Street Railways—*Franchise—Conditions Imposed—Acceptance—Con-
tract.*—The provisions of a city ordinance granting to a street rail-
way company permission to operate its railway in the city, and re-
quiring it to sell "labor tickets" at reduced rates and to give trans-
fers without additional charge over connecting lines, when ac-
cepted and acted on by the railway company constitutes a con-
tract between it and the city with which it is obliged to comply.

2. Street Railways—*Franchise—Reduced Rates—Transfers—Intersecting
Lines.*—Where a city ordinance granting to a street railway com-
pany the franchise to operate its railway within the city provides
that the company shall sell "labor tickets" at reduced rates, and
grant transfers, without additional charge, over any intersecting
line, good to the end of such line, and there is at the time of such
grant another street railway connecting with the first mentioned
line and extending several miles out into the country, the latter
railway is an intersecting line, and it is incumbent on the first
mentioned company to grant such transfers, good for the whole
length of such connecting line, and this requirement is not affected
by the fact that so much of the latter line as lies within the city
is subsequently purchased by the first mentioned company, and the
residue thereof by a third company which runs its cars with the
same conductors over the entire connecting line to the original
point of intersection of the two lines.  The word "line," as used
in the ordinance, will be construed as·employed in its popular sig-
nificance, and with reference to the circumstances out of which the

*Judge Buchanan was conducting the Bar Examination.

granting of said ordinance grew, and with reference to the urban and suburban street railway conditions in and around the city at that time.

Appeal from State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Miles M. Martin* and *A. B. Guigon,* for the appellants.

*Attorney-General Wm. A. Anderson, F. M. Conner* and *H. R. Pollard,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

This case is before us upon an appeal from an order of the State Corporation Commission, requiring the appellants to sell certain tickets known as "labor tickets," at the rate of two for five cents, and to issue transfers between the Seven Pines line of the Virginia Passenger & Power Company and the intersecting line in the city of Richmond of the Richmond Passenger & Power Company.

With its order refusing the petition of the Virginia Passenger & Power Company and the Richmond Passenger & Power Company, the State Corporation Commission filed a paper setting forth its reasons, which are as follows:

"On the petition of the two defendant railroad companies for permission to alter and advance their rates and charges.

"The defendant railroad companies—the Virginia Passenger & Power Company and the Richmond Passenger & Power Company—having filed in this proceeding their joint petition praying that an order may be entered permitting the discontinuance of the sale of labor tickets on the Seven Pines line, operated by the Virginia Passenger & Power Company, and

permitting the discontinuance of the issue and receipt of transfers between the said Seven Pines line and the Richmond Passenger & Power Company; and separate answers to said petition having been filed by William E. Oakley and the city of Richmond, and a full hearing having been had before the commission on the 24th and 25th days of May, 1904, the commission has carefully considered all of the pleadings, the various exhibits filed with the pleadings, and, at the hearing, the testimony of witnesses and the arguments of counsel, and, proceeding now to dispose of the questions at issue, the commission finds:

"1. That the defendant, the Richmond Passenger & Power Company, acquired the right to operate as a street railway company in the city of Richmond, under the grant and franchises contained in an ordinance passed by the Council of the city of Richmond on the 23d day of December, 1899, and the amendments thereof; and subject to the terms, provisions, and restrictions contained in the said ordinance and amendments; that the said ordinance was accepted by the said Richmond Passenger & Power Company, and became operative in the month of August, 1900; and since that date the line of the Richmond Passenger & Power Company, connecting with what is and was known as the Seven Pines line at 29th and P streets, was operated under the terms and provisions of said ordinance.

"2. That, at the time the said Richmond Passenger & Power Company obtained from the city of Richmond the said ordinance aforesaid, and acquired its rights thereunder, the said Seven Pines line was operated by "The Seven Pines Railway Company," having its apparent terminus at the said 29th and P streets, in the city of Richmond. The defendant, the Virginia Passenger & Power Company, became, by subsequent deeds, the owner of the said Seven Pines line at the point from the limits of the city of Richmond to Seven Pines, in the

county of Henrico, and is now operating the same, running its cars with the same conductors and motormen continuously through to said corner of said 29th and P streets; the portion of said line from the city limits to 29th and P streets having been conveyed to the Richmond Passenger & Power Company.

"3. That, by the provisions of the said ordinance of the city of Richmond of December 23, 1899, it was provided in sub-section 5 of section 2, among other things, that the Richmond Passenger & Power Company should sell to all passengers between the hours of 6 A. M. and 7 A. M., tickets at the rate of two for five cents, to be used only between the hours of 6 and 7 A. M., from Monday to Saturday, inclusive, said tickets being commonly known as "labor tickets"; and it is further provided in said sub-section of said section that each passenger, having paid his fare, may demand and receive from the conductor of the car upon which he first took passage a transfer ticket without additional charge, which fare and transfer ticket should entitle such passenger to ride upon such car upon which he has taken passage to the point where the said line intersects with the line to which said passenger desires to be transferred, and after arriving at said point of intersection such passenger may take passage on the line indicated on said transfer ticket, and on the surrender thereof to the conductor of such car, shall be permitted to ride to the end of the last mentioned line. And it seems to the commission that these provisions of the said ordinance constitute a contract binding upon the said company and with which it is obliged to comply.

"4. That soon after said ordinance of December 23, 1899, became operative, the Richmond Passenger & Power Company, and the then owners and operators of the said Seven Pines line, put into effect and continued a system of transfers whereby passengers on either line going in the direction of and wishing to be transferred to the other line, were given transfers

for that purpose, which were received by the conductors of the respective lines, and passengers were so carried on a single fare to the end of each of these lines; and that, on or about the same time, the said labor tickets were put into effect on each of the said lines, and mutual transfers on said labor tickets allowed by and between the said lines; the point of transfer between the said two lines being at 29th and P streets; and that this arrangement for mutual transfers at the said point and the sale of labor tickets with the right of transfer on them, continued without interruption until the controversy now before the commission was brought about.

"Under the foregoing facts now found by the, commission, and with all the testimony before it bearing upon these facts, the commission is of opinion that the Council of the city of Richmond, in using the word 'line' in the section of the ordinance above mentioned, employed that word in its popular signification, and with reference to the circumstances out of which the granting of the said ordinance grew, and with reference to the urban and suburban street railroad conditions in and around the city of Richmond at that time, and that the line then known, and since known, as the Seven Pines line, was an intersecting line; and, considering the question before the commission in all its aspects, the commission is of opinion that it should not permit the two defendant companies to change the system of transfers and labor tickets which have been in effect for several years, and with reference to which the patronage of the defendant lines in the city of Richmond and in the growing section of Henrico county, adjacent to the city, along with the Seven Pines line runs, has been acquired.

"It is, therefore, ordered by the commission that in the matter of the said labor tickets and the said transfers between the Seven Pines line of the Virginia Passenger & Power Company and the intersecting line in the city of Richmond of the

Richmond Passenger & Power Company, the present system of the sale of said labor tickets and the interchange of transfers be continued, and that the advance in rates of fares, which would follow from granting the petition of the two said companies in this proceeding, be refused.

"It is therefore ordered that the application made in this proceeding by the Virginia Passenger & Power Company and the Richmond Passenger & Power Company be denied."

It thus appears that, in the view of the Corporation Commission, the railroad companies had assumed contractual obligations with respect to the sale of labor tickets and the giving of transfers in controversy. We think that the construction placed by the Corporation Commission upon the ordinances of the city is a reasonable and proper one, and this conclusion is greatly strengthened by the fact that it is the construction acted upon by the appellants, commencing a short time after the passage of the ordinances by the city and continuing for about four years, when the railroad companies discontinued the sale of labor tickets and the giving of transfers, which led to the institution of the proceedings before the Corporation Commission. We have given the views of the Corporation Commission in full, because they are so clear and convincing that we are content to adopt them as the opinion of this court.

Upon the whole case, we are of opinion that there is no error in the order complained of, which is affirmed.

*Affirmed.*