# Richmond

COMMONWEALTH, AT THE RELATION OF DOWDEN, V. RICH-
MOND AND RAPPAHANNOCK RIVER RAILWAY COMPANY.

January 15, 1914.

1.  STREET RAILWAYS—*Discontinuance of Transfers—Advertising Under
    Section 1033-f of Code.*—Section 1033-f of the Code (1904),
    which provides that before granting any franchise, privilege,
    lease or right of any kind to use any public property or ease-
    ment, except a trunk railway, it shall be the duty of the city
    or town proposing to make the grant to advertise the ordi-
    nance, etc., in a newspaper published in such town or city for
    four successive weeks, has no application to a city ordinance
    which simply repeals a prior ordinance, requiring two street
    railway companies to give transfers over each other's lines.

2.  STREET RAILWAYS—*Advancing Rates—Rates Fixed by City Ordi-
    nance—Code, Section 1294-c (6)—Constitution, Section 156-b.*—
    Section 1294-c (6) of the Code (1904), providing that "no ad-
    vance shall be made in the rates, fares and charges of public
    service corporations until the same have been submitted to
    and approved by the State Corporation Commission," must be
    read in connection with section 156-b of the Constitution, which
    gives to cities, towns and counties the right to prescribe rules,
    regulations and rates of charge to be observed by public service
    corporations in connection with any services performed by them
    under a municipal or county franchise granted by such city,
    town or county so far as such services may be wholly within
    the limits of the city, town or county granting the franchise.
    So, reading the two, the statute must be construed to apply to
    rates which are not lawfully and definitely fixed by contract
    and which need the approval of the State Corporation Commis-
    sion, whereas the rates and transfer privileges involved in the
    case at bar are fixed by municipal ordinance, embodying a defi-
    nite contract.

3.  STREET RAILWAYS—*Transfers Compelled by City Ordinance—Change
    of Ordinance.*—Where the privilege of transfer from one street
    railway to another without additional charge has been lawfully
    created by a valid city ordinance, and a subsequent ordinance

relieves the railway companies of the obligation to furnish such transfers, the privilege ceases.

4. STREET RAILWAYS—*Wholly in City Limits—Rates Fixed by City Councils.*—The councils of the city of Richmond are vested by the Constitution with legislative discretion when prescribing rules, regulations and rates to be observed by street railway companies in connection with services performed under the franchise to use the streets of the city granted by the councils, so far as such services are wholly within the limits of the city, and the State Corporation Commission has no jurisdiction or power to supervise or annul their action in that respect.

5. STREET RAILWAYS—*Connecting Lines—Lines in and Out of City Limits—Rates—Transfers—Jurisdiction of State Corporation Commission.*—While the State Corporation Commission has full and complete jurisdiction to prescribe rules, regulations and rates for an electric railway lying wholly outside of the city of Richmond and connecting at the corporate limits with a street railway lying wholly within said city, it would be unjust and inequitable to compel the former to accept transfers from the latter when the city councils have relieved the latter of the obligation to accept transfers from the former and it declines to give such transfers.

6. STREET RAILWAYS—*Connecting Lines—Transfers—Motives in Refusing.*—The interests and motives of two street railway companies having connecting lines in discontinuing transfers from one line to the other cannot affect the legal rights of patrons of the lines. The sole question is whether the companies are within their legal rights in discontinuing such transfers.

Appeal from the State Corporation Commission.

*Affirmed*

The opinion states the case.

*George Bryan, T. A. Wickham* and *Maurice A. Powers,* for the appellant.

*A. B. Guigon, Thos. P. Bryan* and *H. W. Anderson,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This case is before us on an appeal from an order of the State Corporation Commission. For some years prior to this proceeding the predecessors in title of the appellee companies issued transfers to passengers traveling in either direction at Twenty-ninth and P streets in the city of Richmond. These transfers entitled the passenger coming into the city to travel upon the cars of the Virginia Railway and Power Company to any point on its line in the city, and, if going in the other direction, to travel on what is now the Richmond and Rappahannock River Railway Company's line into the county of Henrico to Seven Pines, a distance of about seven miles from the city limits. This privilege of transfers at the point mentioned was extended in pursuance of an ordinance of the city of Richmond, dated December 23, 1899, the provisions of which constituted a contract between the companies and the city, which imposed upon the former an obligation to issue such transfers. *Va. Passenger & Power Co.* v. *Commonwealth,* 103 Va. 644, 49 S. E. 995. Since that time the line from the city limits to Seven Pines has become the property of the appellee, the Richmond and Rappahannock River Railway Company, and the line within the city limits is now owned by the appellee, the Virginia Railway and Power Company.

For reasons satisfactory to itself the city of Richmond, through its council, passed ordinances dated, respectively, February 17, 1912, and May 8, 1912, amending the ordinance of December 23, 1899, so as to forever relieve and release the appellees from all obligation to furnish the transfers in question.

The first contention of the appellant is that under section 1033-f of the Code of 1904 it was necessary to the validity of the ordinance of February 17, 1912, that it should have been preceded by an advertisement once a week for four successive weeks, and that the rights thereby granted should have been exposed by the city council to public bidding.

This position is not well taken. The section relied on provides that, before granting any franchise, privilege, lease or right of any kind to use any public property or easement, except a trunk railway, it shall be the duty of the city or town proposing to make the grant to advertise the ordinance, etc., in a newspaper published in such town or city for four successive weeks. It is clear that this statute has no application to the present case, and, therefore, compliance with it was not necessary. By the ordinances of February 17 and May 8, 1912, the council did not grant any franchise, privilege, lease or right of any kind to use any public property or easement of any description, as set forth in the language of the statute relied on. The ordinances of 1912 merely changed the contract so as to relieve the companies from the obligation of issuing transfers to and from points on the Seven Pines line outside of the city. The city of Richmond had by its ordinance of December, 1899, required of the predecessors in title to the appellees the duty of furnishing these transfers, and that contract was enforced. *Va. P. & P. Co.* v. *Com'th, supra.* The city had the right to make that contract and had an equal right to modify its terms by forever releasing the present owners from the obligation to furnish the transfers in question. So far as the present controversy is concerned, this is all that was intended to be and all that has been accomplished by the ordinances of 1912, and to that end no invitation to bidders was required, nor was it necessary to advertise the amended ordinances for four successive weeks.

The statute further provides as follows: "And no amendment that releases the grantee or his assignee from the performance of any duty required by the ordinance granting the franchise, or that authorizes an increase in the charges to be made by such grantee or assignee for the use by the public of the benefits of such franchise, shall be granted

unless or until notice of such proposed amendment shall be given to the public by advertising the proposed amendment for ten days in some newspaper published in the city or town."

This provision of the law was strictly complied with before the amendments of 1912 were adopted, and constituted all that was necessary to be done to make those amendments valid and effectual.

The second and only other proposition submitted by the petition for appeal is that under section 1294-c of the Code application should have been made to the State Corporation Commission, after ten days' publication, for leave to advance the fares on the Seven Pines line, and that leave formally obtained.

In answer to this contention the Corporation Commission says: "The clause referred to reads as follows:

" '(6) No advance shall be made in the rates, fares and charges which have been established as aforesaid, until the same are submitted to and approved by the State Corporation Commission, and when so advanced ten days' notice thereof shall be given, which shall plainly state the changes made in the schedule then in force, and the time when the increased rates and fares and charges will go into effect; and the proposed changes shall be shown by printing new schedules, or shall be plainly indicated upon the schedules in force at the time, and kept open to public inspection.'

"This statute, however, must be construed in connection with the proviso contained in section 156-b of the Constitution. This is the section which gives this commission the power and charges it with the duty of supervising and controlling transportation companies in this State, with authority to fix their rates, rules and regulations. This proviso reads as follows:

" 'Provided, however, that nothing in this section shall

impair the right which has heretofore been, or may here-
after be, conferred by law upon the authorities of any
city, town or county to prescribe rules, regulations or rates
of charge to be observed by any public service corporation
in connection with any services performed by it under a
municipal or county franchise granted by such city, town
or county, so far as such services may be wholly within
the limits of the city, town or county granting the
franchise.'

"If there be any conflict between this constitutional
provision and the statute, 1294-c (6), of course the con-
stitutional provision is the superior law and must prevail.

"We do not, however, think that such a conflict exists.
The statute must be construed to apply to rates which are
not lawfully and definitely fixed by contract and which
must need the approval of this commission, whereas the
rates and transfer privileges here involved are fixed by a
municipal ordinance, embodying a definite contract.   The
matter involved is the exchange of transfers in the city of
Richmond, at Twenty-ninth and P streets, that being the
point of connection between the two railway lines.  We have
here, then, a contract legally entered into and lawfully
modified by the municipal authorities of the city of Rich-
mond, and while the privileges of persons traveling from
Seven Pines into the city are thereby curtailed, still these
privileges were originally derived from the ordinance of
December 23, 1899, and without that ordinance could never
have been demanded.   The ordinance, having been thus
amended, the privilege no longer exists.

"This commission has no jurisdiction or power to super-
vise or annul the action of the city authorities under the
circumstances developed in this case.   The city councils
are by the Constitution vested with legislative discretion
when prescribing rules, regulations or rates of charge to
be observed by these companies in connection with services

performed under the franchise to use the streets of the city granted by the councils, so far as such services are wholly within the limits of the city. The service of the Virginia Railway and Power Company, so far as it relates to the transfers referred to, is performed entirely within the city of Richmond. So far as the service of the Richmond and Rappahannock River Railway Company with reference thereto between the city limits and Seven Pines is concerned, it is undoubtedly true that this commission has full and complete jurisdiction. This service, however, is so dependent upon the corresponding service of the Virginia Railway and Power Company within the limits of the city that it would be unjust and inequitable to require the Richmond and Rappahannock River Railway Company to accept and honor transfers held by travelers leaving the city, when the city council has relieved the Virginia Railway and Power Company from the obligation to accept transfers from travelers entering the city."

It is unnecessary to add anything to what is here said in order to show the fallacy of the second contention of the appellant.

It is insisted that the Corporation Commission, in disposing of this second contention, held that it did not have jurisdiction of the case, and that, therefore, it had no right to decide the first question submitted by the appellant. This is a mistaken view. If the first contention of the appellant had been sustained, that would have ended the case. It was proper, therefore, to dispose of that question before the second was reached. Moreover, the commission, in disposing of the second contention, did not decline to take jurisdiction of the case, but held that, under the Constitution and laws of the State, the city council was vested with legislative discretion to prescribe rules, regulations and rates of charge to be observed by companies using its streets under a franchise granted by the city,

where such service was wholly within its limits, and that the commission had, therefore, no jurisdiction or power to supervise or annul the action of the city authorities under the circumstances developed in this case.

Much is said in behalf of the appellant about the alleged community of interest, between the two appellee companies and the motive actuating them in discontinuing the transfers at the point mentioned. The answers of the companies deny the alleged community of interest, and the evidence wholly fails to support the allegation that any such interest exists. The interests and motives of the appellee companies cannot, however, affect the legal rights of the parties to this case. The sole question here is, whether the ordinances and the action of the appellees complained of are within the law of the Commonwealth. The conclusion of the Corporation Commission, that neither of the two contentions of the petitioner could be sustained and that his petition should be dismissed, was plainly right, and its order to that effect, which is here complained of, must be affirmed.

*Affirmed.*