## Staunton.

## CITY OF RICHMOND V. CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA.

### September 16, 1920.

1. MUNICIPAL CORPORATIONS—*Authority from State to Fix Rates of Public Service Corporations.*—A State can authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a telephone company, or other public service corporation, for a definite term, not unreasonable in point of time, and the effect of such a contract is to suspend during the term of the contract the governmental power of regulating rates.

2. MUNICIPAL CORPORATIONS—*Authority from State to Fix Rates of Public Service Corporations—Construction of Authority.*—For the very reason that a contract between a municipal corporation and a public service corporation, fixing rates to be charged for a definite term, under authority from the State, has the effect of extinguishing for the time being an undoubted power of government, the contract and the authority to make it must clearly and unmistakably appear. All doubts must be resolved in favor of the continuance of the power of the State. It may be stated, as a general rule, that an ambiguous or doubtful contract between a telephone company and a municipal corporation as to the rights of the public, will be construed in favor of the public rights.

3. MUNICIPAL CORPORATIONS—*Fixing Rates to be Charged by Telephone Company—Corporation Commission—Impairment of Obligation of Contracts.*—Where express power to fix telephone rates is not given a municipality, it is subject to the general law passed pursuant to the Constitution, and a constitutionally created commission may be authorized by statute to revise rates established by a municipal franchise conferred on a telephone company. The State may direct the company to raise its rates above those fixed by the franchise, if it is necessary to secure effective service, and so far as the city is concerned there is no constitutional objection on the ground of impairment of a contract obligation.

4. TELEGRAPHS AND TELEPHONES—*Power of City of Richmond to Fix Rates.*—Before the Constitution of 1902 the city of Richmond had never been vested with express power to prescribe telephone rates.

5. MUNICIPAL CORPORATIONS—*Power to Fix Telephone Rates.*—Even though there may not be express words, giving a municipality the power to fix telephone rates, such power nevertheless exists if "clearly and by express intendment, though not by express words," the State abandons to municipalities the control of rates for local service, and both the courts and the legislature itself are bound by such clear intendment. But the difference, if any, between "power expressly conferred" and "power conferred clearly and by express intendment" is so shadowy as to be indistinguishable.

6. CORPORATION COMMISSION—*Jurisdiction of Commission.*—The commission is the creation of the Constitution and has no inherent power. All of its jurisdiction is conferred either by the Constitution or is derived from statutes which do not contravene the Constitution. Such statutes are of two classes—one, those which are either directed or authorized by the Constitution, and the other, those which have their sanction in the inherent reserved or police power of the State.

7. MUNICIPAL CORPORATIONS—*Power to Fix Telephone Rates—Proviso in Section 156-b of the Constitution of 1902.*—The proviso in section 156-b, Constitution of 1902, does not purport either to confer any new power upon municipalities to fix rates of charge to be observed by public service corporations, or to ratify any contract previously made between municipalities and public service corporations. It embodies and constitutes the sole restriction upon the powers of the corporation commission as to such rates, but this restriction is in terms limited to rights which have been or may thereafter be by law conferred on municipalities to prescribe rates of charge to be observed by any public service corporation.

8. CORPORATION COMMISSION—*Section 156-b, Constitution of 1902 —Restriction Upon Power of Legislature.*—Section 156-b, Constitution of 1902, was a grant of power to the commission, and was never intended to be and is not a limitation of any power of the legislature, except so far as such limitation is clearly and definitely expressed. In its essential features, the section is a grant and not a limitation of power. Among other powers thereby granted, it specifically provides that the authority of the commission (subject to review on appeal) to prescribe rates for transmission companies shall be paramount, while its authority to prescribe other rules, regula-

tions or requirements shall be subject to the authority of the General Assembly to legislate thereon by general laws.

9. MUNICIPAL CORPORATIONS—*Fixing Rates of Public Service Corporations—Power to Prohibit Use of Streets.*—Where a city has the statutory or constitutional right to prohibit the use of its streets by public service corporations, this is insufficient to confer express power upon the city to prescribe rates to be charged by such public service corporations.

10. TELEGRAPHS AND TELEPHONES—*Rates—Power of the Legislature.*—While the legislature may enact no law which contravenes the Constitution, it has unlimited power, through the corporation commission, to regulate telephone rates, except so far as precluded from doing so by constitutional inhibition.

11. STATUTES—*Repeal.*—Repeals by implication are not favored.

12. POLICE POWER—*Scope of Police Power.*—In the police power, which cannot be surrendered, or defined with circumstantial precision, but which, except as restrained by constitutional inhibition, is unlimited, is found the inexhaustible source of those new legislative regulations which in response to the needs of a progressive civilization are designed to promote the public convenience and general prosperity.

13. TELEGRAPHS AND TELEPHONES—*Franchise Granted Telephone Company by City Fixing Rates—Jurisdiction of Corporation Commission to Alter Rates Fixed by Franchise—Case at Bar.*—The proviso in section 156-b, Constitution of 1902, did not prohibit the Corporation Commission from taking jurisdiction of a petition of the Chesapeake and Potomac Telephone Company of Virginia for the revision of the company's rates for services performed within the city of Richmond, because the franchise relied upon by the city, adopted before the Constitution became effective, under which the company was given the right to occupy the city streets with its works for a certain period, and under which the company contracted not to charge for telephone service rates in excess of those set forth in a schedule, was not adopted pursuant to any right conferred by law upon the authorities of the city to prescribe rates of charge to be observed by the telephone company, and hence, the jurisdiction of the commission conferred by section 156-b to prescribe the rates to be charged by transmission companies is plenary and paramount.

14. TELEGRAPHS AND TELEPHONES—*Franchise Granted Telephone Company by City Fixing Rates—Jurisdiction of Corporation Commission to Alter Rates Fixed by Franchise—Case at Bar.*—Even if the power of the commission to prescribe the rates to be charged by the telephone company was not plenary and

paramount under section 156-b of the Constitution of 1902, the General Assembly, which is not restricted or controlled by the proviso of that section, has expressly conferred upon the commission, by Code of 1919, sections 4052 and 4054, the jurisdiction to prescribe and enforce just and reasonable telephone rates, charges and regulations, notwithstanding they may have been provided for by a municipal ordinance, franchise or other contract, which was adopted before the present Constitution became effective.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*George Wayne Anderson,* for the plaintiff in error.

*John S. Eggleston,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

While the arguments of counsel in this case are thorough and complete, most of the questions so ably discussed are well settled, and the crucial questions involved lie within narrow limits. Without neglecting the consideration of every authority cited and every fair argument based thereon, we shall omit reference to many of them in our effort to escape a criticism similar to that made by one of the counsel, to the effect that the briefs in this case are overloaded by the industry displayed and the voluminous citations, as well as confused by irrelevant argument and the discussion of uncontested points. The issue to be determined is whether or not the State Corporation Commission (hereafter called the commission) erred in taking jurisdiction of the rates of the appellee company for services performed within the city of Richmond, which the city claims have been prescribed by a contract which is

protected by the proviso in section 156-b of the Virginia Constitution.

The city having the right under its charter and by the general law (Code 1887, sec. 1287) to prohibit any telephone company from occupying the streets of the city with its lines without the consent of the council, by ordinance of October 15, 1901, granted a franchise to the Southern Bell Telephone and Telegraph Company, its successors and assigns, giving it the right to occupy the streets of the city with its works for the period of thirty years; and by section eleven of this ordinance the company contracted not to charge for telephone service rates in excess of those set forth in a schedule marked "Schedule of Rates of the Southern Bell Telephone and Telegraph Company," to be filed with the clerk of the city council. The original company and its successor, the appellee, observed the rates thereby prescribed until the Postmaster-General, under the act of Congress (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾x)., passed pursuant to the war power of the Federal government, took over and operated the property, and increased these rates. Then, before the government released the property and returned it to its owner the company filed before the commission its petition, asking for still further increases in the rates.

Pending the consideration of this petition, the city denied the authority of the commission over the rates, and as it was evident that the property would be returned to the company November 30, 1919, before there could be any proper investigation of the questions involved, upon the application of the company the commission entered an order authorizing it to continue to charge the rates which had been fixed by the Postmaster-General until the commission could itself make the necessary inquiries and prescribe reasonable rates.

The city insisted that the commission was without jurisdiction to increase the rates fixed by the ordinance of 1901, and that they constitute the legal and only rates which the company has the right to charge in the city of Richmond.

The recital of a few general principles which may be regarded as settled, and which are conceded, may be helpful.

. [1-3]   A State can authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a telephone company, or other public service corporation, for a definite term, not unreasonable in point of time, and the effect of such a contract is to suspend during the term of the contract the governmental power of regulating the rates. For the very reason, however, that such a contract has the effect of extinguishing for the time being an undoubted power of government, the contract and the authority to make it must clearly and unmistakably appear. All doubts must be resolved in favor of the continuance of the power of the State. It may be stated, as a general rule, that an ambiguous or doubtful contract between a telephone company and a municipal corporation as to the rights of the public, will be construed in favor of the public rights. Where express power to fix telephone rates is not given a municipality, it is subject to the general law passed pursuant to the Constitution, and a constitutionally created commission may be authorized by statute to revise rates established by a municipal franchise conferred on a telephone company. The State may direct the company to raise its rates above those fixed by the franchise, if it is necessary to secure effective service, and so far as the city is concerned there is no constitutional objection on the ground of impairment of a contract obligation. *Home Telephone, etc., Co.* v. *Los Angeles,* 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176; *Colorado Telephone Co.* v. *Fields,* 15 N. M. 431, 110 Pac. 571, 30 L. R. A. (N. S.) 1088; *Woodburn* v. *Public Service Commission,* 82 Ore. 114,

78

161 Pac. 391, Ann. Cas. 1917E, 996, note, L. R. A. 1917C, 98, note; *State* v. *Superior Court*, 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D, 78, note; L. R. A. 1915C, 287, note; *Benwood* v. *Public Service Commission*, 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C, 261, note; *Manitowoc* v. *Manitowoc, etc., Co.*, 145 Wis. 13, 129 N. W. 925, 140 Am. St. Rep. 1056, 26 R. C. L. 540.

As pointed out in *Virginia Western Power Co.* v. *Commonwealth*, 125 Va. 469, 99 S. E. 723, it is essential that the authority to make such an irrevocable contract, superior to the police power of the State, be expressly conferred, or, as stated in *Home Telephone, etc., Co.* v. *Los Angeles, supra,* "for the very reason that such contract has the effect of extinguishing *pro tanto* an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power." Numerous other cases can be cited to sustain this proposition.

[4, 5] One question then is whether or not the city of Richmond has ever been vested with express power to prescribe telephone rates; and we look in vain in the statutes under which this franchise was granted, prior to the Constitution of 1902, for such a power. The charter provision relied on is negative, that "no company shall occupy with its works the streets of the city without the consent of the council," while the statute is affirmative, that every telephone company "may construct, maintain and operate its line * * * along or over the streets of any city or town, with the consent of the council thereof," and these statutes are the sole source of the city's power, and mark its limit. It is claimed that even though there may not be express words giving such a power, it nevertheless exists if "clearly and by express intendment, though not by express words," the State abandons to municipalities the control of rates

for local service, and that both the courts and the legislature itself are bound by such clear intendment. No just criticism of this suggestion can be made, but the difference, if any, between "power expressly conferred" and "power conferred clearly and by express intendment" is so shadowy as to be indistinguishable. What the city is claiming here is that while true that the original contract should be construed as having been entered into subject to the superior power of the State to regulate the rates of public service corporations, yet nevertheless that agreement was, by the proviso contained in section 156-b of the Constitution, revitalized and thereby changed in its essential characteristics into an inviolable contract; and that the State, by that proviso, has for the term of the franchise withheld jurisdiction from the commission and abandoned to the city of Richmond its right of control, and empowered the city to force the company to maintain the rates prescribed by the ordinance.

[6] The commission is the creation of the Constitution and has no inherent power. All of its jurisdiction is conferred either by the Constitution or is derived from statutes which do not contravene the Constitution. Such statutes are of two classes—one, those which are either directed or authorized by the Constitution, and the other those which have their sanction in the inherent reserved or police power of the State.

1. We first inquire, then, whether the Constitution vests the commission with power to preserve the rates of the company in the city of Richmond. Unless withheld by the proviso thereof, section 156-b, in express words and with a circumspection which excludes all doubt of its meaning, confers such power, for it provides that the "Commission shall have the power, and be charged with the duty," of supervising, regulating and controlling "all transportation and transmission companies" doing business in Virginia,

"in all matters relating to the performance of their public duties and their charges therefor;" and "to that end, the commission shall, from time to time, prescribe and enforce against such companies * * * such rates, charges, classifications of traffic, and rules and regulations * * * as may be reasonable and just," etc.; that "all rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the commission, within the scope of its authority, shall be unlawful and void;" that the authority of the commission (subject to review on appeal) "to prescribe rates, charges and classifications of traffic, for transportation and transmission companies, shall be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the General Assembly to legislate thereon by general laws;" that section (156-b), then, after vesting the commission with certain plenary power, paramount even to any legislative authority, as to the rates of transmission companies (in section 153 defined as including telegraph and telephone companies), contains this proviso: "provided, however, that nothing in this section shall impair the right which has heretofore been, or may hereafter be conferred by law upon the authorities of any city, town or county to prescribe rules, regulations or rates of charge to be observed by any public service corporation in connection with any services performed by it under a municipal or county franchise granted by such city, town or county, so far as such service may be wholly within the limits of the city, town or county granting the franchise."

[7]   In *Virginia Western Power Company* v. *Commonweath, supra,* it was held that under section 125 of the Constitution of 1902 and the statutes passed pursuant thereto, the cities and towns had been granted the express right to make the contracts there involved when granting such

franchises since the Constitution, but held also in accordance with the unbroken line of authority, that only in such statutes could such express power be found. Certainly this proviso in section 156-b does not itself confer such express authority if the language is to be given its ordinary and accepted meaning. It specifically relates to rights which have been theretofore, and hence otherwise, conferred by law upon city authorities, and provides that if the right has been so theretofore conferred upon any city to prescribe rates of charge, that then the contracts made thereunder shall be superior to the powers conferred by that section upon the commission. It does not purport either to confer any new power or to ratify any contract previously made. It embodies and constitutes the sole restriction upon the powers of the commission as to such rates, but this restriction is in terms limited to rights which have been or may thereafter be by law conferred on municipalities to prescribe rates of charge to be observed by any public service corporation. So that in order to support the contention that this municipal franchise embodies an inviolable contract which is superior to the jurisdiction of the commission conferred by that section, it is necessary to find somewhere in statute or Constitution that the city has had conferred upon it the authority to prescribe rules, regulations or rates of charge to be observed by telephone companies. The power of the city rests upon nothing else except the statutes authorizing it to prevent public service corporations from occupying its streets without the consent of the council.

Reference is made for the city to Constitution, sections 124 and 125, but not for the purpose of claiming that these sections determine this issue. Section 125 provides that every franchise granted by a city "shall make adequate provision by way of forfeiture of the grant, or otherwise, to secure efficiency of public service at reasonable rates,

and the maintenance of the property in good order throughout the term of the grant." This is cited as showing a policy on the part of the State, first inaugurated by the Constitution of 1902, subsequent to the granting of the franchise here involved. While the city does not claim that these sections control this franchise, still it appears to claim that the Constitution thereby ordains a policy for the future, and that together with section 156-b should be construed to apply this home rule policy to franchises which had been previously granted; and therefore that whatever the date of the franchise, these sections of the Constitution, fairly construed, mean that the rates prescribed in every such grant, whether made before or after the adoption of the Constitution are thereby withheld from the jurisdiction of the commission.

There is certainly nothing in sections 124 and 125 to support such a construction, for manifestly they refer only to grants thereafter made. So that the city can only rely upon the proviso in section 156-b.

[8] In determining the effect of this proviso, it is helpful to revert to the law existent before the Constitution became effective. At that time the State, through the legislature, certainly had plenary power over the rates of all public service corporations, but the power had never been exercised. The avowed purpose of the convention, known to all, was to exercise the dormant power of the State for the control of such corporations. It provided for the organization of the commission, and made it the governmental department of the State for the exercise of such powers; but the section 156-b was a grant of power to the commission, was never intended to be and is not a limitation of any power of the legislature, except so far as such limitation is clearly and definitely expressed. In its essential features, the section is a grant and not a limitation of power. Among other powers thereby granted, it specifi-

cally provides that the authority of the commission (subject to review on appeal) to prescribe rates for transmission companies shall be paramount, while its authority to prescribe other rules, regulations or requirements shall be subject to the authority of the General Assembly to legislate thereon by general laws. After that ample grant of power, there is this limiting proviso which is relied upon by the city to show that the commission has no authority to regulate these rates.

Then, of course, there recurs the same and only vital question as to the authority of the city of Richmond at the time the franchise was granted to prescribe rates for telephone companies, for unless such power had been so previously granted, the proviso has no application thereto. As to whether or not there be any municipality in this State which had been granted such a power before the Constitution became effective, we are not informed, but it is clear from the authorities that no such power existed unless there is some enactment whereby the State had by express intendment clearly conferred it.

[9] It has been frequently decided, where a city has the statutory or constitutional right to prohibit the use of its streets by public service corporations, that this is insufficient to confer such express power to prescribe rates. These cases from Illinois, Utah and Missouri, clearly, and from New York, apparently, involved such a constitutional provision, and in each it is held that such a provision does not deprive the legislature of its power to prescribe rates, notwithstanding such franchise contract: *State Public Utilities Commission* v. *Chicago, etc., Ry. Co.*, 275 Ill. 555, 114 N. E. 330, Ann. Cas. 1917C, 50; *City of Chicago* v. *O'Connell*, 278 Ill. 591, 116 N. E. 213; *Chicago Railways Co.* v. *City of Chicago*, 292 Ill. 190, 126 N. E. 585; *Salt Lake City* v. *Utah Light & Traction Co.* (Utah), 173 Pac. 556, 3 A. L. R. 715; *City of St. Louis* v. *Public Service Commission,*

276 Mo. 509, 207 S. W. 799; *People ex rel. South Glen Falls* v. *Public Service Commission,* 225 N. Y. 216, 121 N. E. 777. Many other pertinent cases could be cited. Among them are these recent cases arising under statutes substantially like that in force in Virginia in 1901 when this franchise was adopted, which authorized cities to prohibit the use of their streets by public service corporations without the consent of the city authorities:

*Milwaukee Elec. R. Co.* v. *Wisconsin Railroad Commission,* 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 1254. The pertinent language of the Wisconsin statute there relied on reads thus: "Any municipal corporation or county may grant to any such corporation * * * the use, upon such terms as the proper authorities shall determine, of any streets, parkways, or bridges, within its limits * *." Mr. Justice Day stated the general rule upon the subject as follows:

"The fixing of rates which may be charged by public service corporations, of the character here involved, is a legislative function of the State, and while the right to make contracts which shall prevent the State, during a given period, from exercising this important power, has been recognized and approved by judicial decisions, it has been uniformly held in this court that the renunciation of a sovereign right of this character must be evidenced by terms so clear and unequivocal as to permit of no doubt as to their proper construction. This proposition has been so frequently declared by decisions of this court as to render unnecessary any reference to the many cases in which the doctrine has been affirmed. The principle involved was well stated by Mr. Justice Moody in *Home Teleph. & Teleg. Co.* v. *Los Angeles,* 211 U. S. 265, 273, 53 L. Ed. 176, 29 Sup. St. Rep. 50:

" 'The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender

itself, as well as the authority to make it must be closely scrutinized. No other body than the supreme legislature (in this case the legislature of the State) his the authority to make such a surrender, unless the authority is clearly delegated to it by the supreme legislature. The general powers of a municipality, or of any other political subdivision of the State, are not sufficient. Specific authority for that purpose is required."

Then referring to the opinion of the Chief Justice of Wisconsin, saying that, while the term "grant" was used, "he held the grant was to be upon terms such as the municipal authorities might determine, and that this language was more appropriate to the exercise of power by the municipality than to the making of a contract between the parties," upon this point, Mr. Justice Day continued: "The language of the section certainly lends itself to this construction, and there is nothing in specific terms conferring the right to contract by agreement between the parties, much less to make such contract during its existence exclusive of any further right of the State to act upon the subject in the exercise of its legislative authority. It authorizes the grant of the use of the streets upon such terms as the proper authorities shall determine not upon such terms as the parties in interest shall agree to." *Atlantic Coast, etc., Ry. Co.* v *Board of Commissioners, etc.* (N. J. Court of Errors and Appeals), 92 N. J. L. 168, 104 Atl. 218; *Collingswood Sewerage Co.* v. *Collingswood*, 91 N. J. L. 20, 102 Atl. 901; *City of Benwood* v. *Public Service Commission, supra; State ex rel. City of Billings* v. *Billings Gas Co.*, 55 Mont. 102, 173 Pac. 799; *City of Dawson* v. *Telephone Co.*, 137 Ga. 62, 72 S. E. 508.

The proviso adds nothing to the powers of the cities, but does withhold jurisdiction from the commission in those instances in which express power to prescribe such rates has been otherwise conferred upon the cities.

79

Our view, therefore, is that the commission is, by section 156-b, vested with plenary and paramount power over these rates, and that the restrictive proviso does not refer to such a franchise as is here involved.

2. Reverting, then, to the statutory jurisdiction of the commission, we observe that there are certain constitutional provisions which either permit or authorize such legislation. There is certainly nothing prohibitory in the language of section 156-b, which suggests that the legislature itself could not thereafter exercise its reserved power to confer additional jurisdiction upon the commission. As if antici-pating that it might at some time be contended that the granting of this power to the commission should be con-strued as withholding all other power except that which was thereby expressly granted the following section, 156-c, expressly provides that, "The commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation or control of corporations, or with the prescrib-ing and enforcing of rates and charges to be observed in the conduct of any business where the State has the right to prescribe the rates and charges in connection therewith * * "

The next inquiry then is, whether there is any provision of the Constitution which indicates that the State thereby surrendered or abandoned to the cities its right to prescribe the rates and charges of telephone companies? This brings us again to the substance of the argument for the city—that is, that proviso does expressly prohibit the prescrip-tion of any rates in excess of those fixed in the franchise under consideration. The restriction, however, is that noth-ing in that section should impair the right which had theretofore been or might thereafter be conferred by law upon the authorities of any city, town or county to pre-

scribe rules, regulations or rates of charge to be observed by any public service corporation in connection with any services performed by it under a municipal or county franchise granted by such city, town or county, so far as such service may be wholly within the limits of the city, town or county granting the franchise.

[10] It is manifest that the Constitutional convention exercised only a part of the reserved power of the State to regulate such rates, and while the legislature may enact no law which contravenes the Constitution, it has unlimited power, through the commission to regulate telephone rates, except so far as precluded from doing so by constitutional inhibition. It is not an instance in which the expression of one thing excludes everything except that which is expressed, for such a power of the State is not exhausted in this respect by its partial exercise. This would be true even if the Constitution had not, by section 159, specifically reserved all the police power of the State, and by section 156-c expressly authorized the legislature to confer additional powers upon the commission for the regulation of such rates. Then, as if to emphasize still further that which needed no emphasis, section 164 provides that "the right of the Commonwealth, through such instrumentalities as it may select to prescribe and define the public duties of all common carriers and public service corporations to regulate and control them in the performance of their public duties, and to fix and limit their charges therefor, shall never be surrendered nor abridged." This reservation indicates that the convention was both cautious and wise in the public interest to discountenance inviolable contracts as to such rates and to retain the control thereof so as to adapt them to changing conditions; because it is as necessary, in order to insure efficient service, to increase rates which are unreasonably low, as it is to reduce them if they are so unreasonably high as to be oppressive and unjust.

Reverting again to section 156-b, (even though such repetition may be unnecessary) we repeat: The language of the proviso refers only to the powers by that section vested in the commission, the general purpose of the section being to confer power not to withhold it. While the proviso limits the powers of the commission which were conferred by that section, its language, which refers only to that section and to those powers, does not purport to curtail any power of the General Assembly, and clearly could not be held to abandon the police power of the State, which is expressly preserved and reserved by section 159.

It does not and was not intended either to so change the character of such a franchise or contract as to exempt it from the police power of the State, or to abandon or to limit the authority of the State, through the legislature to confer additional powers upon the commission. The State had this general power before the Constitution was adopted, and cannot be held to have surrendered any of its powers except as is plainly manifested in the Constitution.

We find nothing else in the proviso referred to, and nothing else in any other section of the Constitution which prohibits the State from exercising its jurisdiction over the rates of public service corporations fixed by municipal franchise theretofore adopted, and we find in section 156-c specific power given the legislature to confer additional powers upon the commission which necessarily include powers in addition to those already conferred by section 156-b, to prescribe rates for public service corporations. Then if, however, we should qualify some of the expressions in the *Virginia Western Power Company Case,* ignore the unbroken current of authority to which we have alluded, make some assumptions of fact, take what may be called a liberal view, and say that inasmuch as the only franchises of which we are aware, or that the members of the Constitutional Convention knew of, were similar to this franchise which was

granted by the city of Richmond, and hence that the intention of the convention, although they used inapt language to express such purpose, was by this proviso to exclude rates thus fixed from the jurisdiction otherwise vested in the commission by the Constitution, still such a construction would only exclude rates such as those fixed by such a contract from the jurisdiction of the commission until the legislature chose to exercise its reserved power; for, as indicated, by no fair construction could the proviso have limited the inherent though unexercised power of the Commonwealth to control and regulate the rates of public service corporations. This power unimpaired has always existed, and the constitutional provisions are but the partial exercise of such pre-existing power which had long been dormant, and the designation of the commission as the agency through which such powers might be executed.

[11] So that, even if there were doubt as to the jurisdiction of the commission over these rates, under the Constitution, section 156-b, it would nevertheless have such jurisdiction under statutes passed since the Constitution became effective. By the act of March 13, 1914 (Acts 1914, p. 174), the legislature conferred additional powers and imposed new duties upon the commission for the supervision and control of telephone companies; and at the same session, by act approved March 27, 1914 (Acts 1914, p. 673), additional jurisdiction was conferred on the commission for the control and regulation of heat, light, power, water and telephone companies. There is some discussion in the briefs as to the precise effect of these enactments, and it is claimed for the city that the act of March 27th, by implication, repeals the act of March 13, 1914. It is unnecessary to say anything about this, except that repeals by implication are not favored, and that we think it certainly possible to make effective many of the provisions of both acts; that, if there be any inconsistency it is only as to this

inconsistency that the earlier act is repealed; and, furthermore, that this is now immaterial because the statutes which are now controlling in this case are found in Code 1919, sections 4052 to 4057. This Code was in effect April 9, 1920, at the time the last order complained of was entered by the commission.

Section 4052 reads thus: "The State Corporation Commission shall have the power and it is charged with the duty of supervising, regulating and controlling all telephone companies doing business in this State in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses thereunder by such companies, and to that end the commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter directed, such rates, charges, rules and regulations, and shall require them to provide and maintain all such public service facilities and conveniences as may be reasonable and just, which rates, charges, rules, regulations, and requirements the commission may, from time to time, alter or amend. All rates, charges, rules and regulations adopted or acted upon by any such company in conflict with those prescribed by the commission within the scope of its authority shall be unlawful and void."

Section 4054 reads: "Upon complaint by any one aggrieved that any rate, charge or practice established or provided for by any municipal ordinance, franchise or other contract, is unreasonable, unjust, insufficient or discriminatory, the State Corporation Commission shall order a hearing, and if, upon such hearing, it shall find that such complaint is well founded, the said commission shall prescribe and enforce just and reasonable rates, charges, or regulations, in lieu of those complained of."

These statutes are too clear to need interpretation, and demonstrate that the legislature has thereby exercised such power, if any, as the convention failed to exercise, for the

control of rates of telephone companies, whether fixed by such a municipal franchise or not.    So that, even if it were true that the commission is prohibited by the proviso to section 156-b from interference with the rates established by this franchise, the legislature was not thereby prohibited from exercising the superior power of the State to confer such additional jurisdiction upon the commission.

There are expressions in this opinion which may not accord with certain previous expressions of this court. *Virginia Passenger & Power Co.* v. *Commonwealth,* 103 Va. 644, 49 S. E. 995; *Northrop & Wickham, Receivers* v. *Richmond,* 105 Va. 335, 53 S. E. 962; *Commonwealth* v. *Richmond, etc., R. Co.,* 115 Va. 756, 80 S. E. 796.    It is sufficient to say as to this what was substantially said in the *Virginia Western Power Company Case,* namely, that the question here involved was neither directly involved nor discussed in any of those cases.    It may be said, in addition to this, that all of those cases involve the franchise granted December 23, 1899, by the city of Richmond to the Richmond Passenger and Power Company, and that by the amended charter of that company (Acts 1899-1900, p. 583), the Virginia legislature expressly recognized and ratified the contract made by the common council of the said city with the said company, and also prescribed that, "all lines of railway built by the said company, or owned and operated by it shall be at all times subject to all restrictions and limitations of whatever nature which may now or hereafter be imposed" by the council of said city as to its railway within the limits of the city.    It is possibly because counsel in those cases knew that this franchise contract had been ratified by the legislature of Virginia previous to the Constitution of 1902, that the questions raised here were not raised in those cases, for while that question is not now before this court, it is appropriate to quote this from *Home Telephone Co.* v. *Los Angeles,* 211 U. S. 276, 29 Sup.

Ct. 53, 53 L. Ed. 184: "The decisions of this court upon which the appellant relies, where a contract of this kind was found and enforced, all show unmistakably legislative authority to enter into the contract. In *Los Angeles* v. *Los Angeles City Water Co.*, 177 U. S. 558, the contract was in specific terms ratified and confirmed by the legislature."

While in the evolution of our legal system we may seem to progress with halting steps, it nevertheless is true that our legislatures and courts, either consciously or unconsciously, are always reaching out after perfect justice, if haply they may find it. One manifest result of this constant aspiration and search for the ideal is that the interests of the few must ultimately and invariably yield to the rights of the many.

[12] In the police power, which cannot be surrendered or defined with circumstantial precision, but which, except as restrained by constitutional inhibition, is unlimited, is found the inexhaustible source of those new legislative regulations which in response to the needs of a progressive civilization are designed to promote the public convenience and general prosperity. *Strawberry Hill L. Corp.* v. *Starbuck*, 124 Va. 87, 97 S. E. 368.

Without attempting to follow the learned counsel as to all details, or to refer to each of their several arguments upon all questions, some of which are only remotely related to the crucial questions here involved, we have reached these conclusions:

[13] (a) That the proviso in Constitution, section 156-b, does not prohibit the commission from taking jurisdiction of the petition of the company for the revision of its rates, because the franchise relied upon by the city and adopted before the Constitution became effective was not adopted pursuant to any right conferred by law upon the authorities of the city to prescribe rates of charge to be observed by the telephone company; and hence that the

jurisdiction of the commission conferred by that section to prescribe the rates here involved is plenary and paramount.

[14] (b)   That even if this were not true the General Assembly, which is not restricted or controlled by the proviso which is relied upon, has expressly conferred upon the commission, by Code 1919, sections 4052 and 4054, the jurisdiction to prescribe and enforce just and reasonable telephone rates, charges and regulations, notwithstanding they may have been provided for by such a municipal ordinance, franchise or other contract as is here relied on, which was adopted before the present Constitution became effective.

*Affirmed.*