𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

CITY OF CLIFTON FORGE V. VIRGINIA-WESTERN POWER
COMPANY.

March 17, 1921.

Absent, Prentis, J.

1. PUBLIC SERVICE CORPORATION—*Electric Light Companies—Rates
—Jurisdiction of Corporation Commission.*—While rates fixed
by a binding contract of franchise between a city and an
electric light company are not within the jurisdiction of the
Corporation Commission, yet rates for services not stipulated
for in the franchise, although rendered by the electric light
company, within the corporate limits, are within the jurisdic-
tion of the Corporation Commission under Acts 1914, ch. 340.

2. PUBLIC SERVICE CORPORATION—*Electric Light Companies—Fran-
chise Covering Night Service—Day Service—Jurisdiction of
Corporation Commission.*—By its franchise which fixed its
rates an electric light company was only required to furnish
incandescent lights "at all hours from sunset to sunrise or as
much earlier and as much later as weather conditions make it
necessary." There was no undertaking for a daytime service,
but the company shortly after the granting of the franchise
began to furnish a continuous night and day service. This
night and day service could not be so dissociated as to permit
the Corporation Commission to regulate rates for the latter
service while maintaining the franchise contract rate for the
former. The city refused to assent to the abrogation of the
day service.

*Held:* That the continuous day and night service was essentially
different from that provided for by the franchise, and hence
was subject to the jurisdiction of the Corporation Commis-
sion.

3. ELECTRIC LIGHT COMPANIES—*Franchise—Day and Night Service
—Estoppel—Jurisdiction of Corporation Commission.*—Where
the franchise of an electric light company required it to fur-
nish electricity to the residents of the city granting the fran-
chise from sunset till sunrise at certain fixed rates, the ren-
dering of a continuous day and night service by the electric

48

light company within the city for more than ten years did not estop the company from denying that the franchise covered the day service so as to deprive the Corporation Commission of jurisdiction. The police power of the State, as exercised through the commission, the constitutional repository of that power cannot be rendered ineffective by an estoppel *in pais,* effective, if at all, only upon the parties to the contract.

4. APPEAL AND ERROR—*Law of the Case.*—A question which has been fully considered and answered adversely to the appellant on a former hearing of the case is not subject to review upon a subsequent appeal.

5. ELECTRIC LIGHT COMPANIES—*Corporation Commission—Fixing Rates Not Grant of Franchise.*—Where the use of the streets of a city for the purpose of furnishing day electric service has been in existence, without objection on the part of the city, for over ten years by a company operating under a franchise to furnish night service at certain rates to the residents of the city, and no rate had ever been fixed by any contract between the city and the company as to the day service, the Corporation Commission in fixing the rates is not granting a use of the streets of the city, but merely fixing a rate for a use already in existence and not covered by the franchise agreement.

6. ELECTRIC LIGHT COMPANIES—*Corporation Commission—Fixing Rates.*—While the Corporation Commission has no power to change the franchise rates of an electric light company for franchise services, yet where the electric light company files with the commission a schedule of rates for an entirely different service, the commission has power to change such schedule if, upon investigation, the rates are found to be unjust or unreasonable. The commission does not initiate rates, but may alter schedules filed before it and fix and order substituted therefor such rates as it may deem just and reasonable. Code 1919, ch. 160. This it may do of its own motion, if it deems it proper, or on complaint of a proper party.

7. ELECTRIC LIGHT COMPANIES—*Corporation Commission—Fixing Rates—Case at Bar.*—In the instant case the Corporation Commission made no investigation and no change because the rates filed with it by an electric light company were not out of line with rates approved by the commission in other communities, and there appeared to be no reason why the commission, of its own motion, should suspend the rates as filed, and there were no complaints.

   *Held:* That the city in which the electric light company was operating was in no wise hurt by the procedure of the commission, as it might at any time go before the commission and make

complaint that the rates were unjust and unreasonable, and, if such complaint is well founded, it would be the duty of the commission to fix just and reasonable rates. This procedure gives the city ample opportunity to be heard as to the justness and reasonableness of the rates charged.

Appeal from an order of the Corporation Commission.

*Affirmed.*

The opinion states the case.

*O. B. Harvey,* for the appellant.

*F. W. King,* for the appellee.

BURKS, J., delivered the opinion of the court.

[1]    This is a continuation of the litigation involved in the case of the *Virginia-Western Power Co.* v. *City of Clifton Forge,* 125 Va. 469, 99 S. E. 723, 9 A. L. R. 1148. On the former appeal the respective rights and duties of the parties were very fully considered and passed upon, and the validity and binding effect of the contract of franchise between the city and the predecessor in title of the appellee were upheld as to the service stipulated for in the franchise. It was also held that as to services not so stipulated for, jurisdiction over the same was vested in the State Corporation Commission, and it was its duty to exercise the same. On that appeal the cases of several cities and towns, involving practically the same questions, were heard together, and the commission refused to take any jurisdiction whatever of them and dismissed the application of the appellee for an increase of rates on the ground that it could not approve rates within the corporate limits of such cities and towns in excess of those fixed by the respective franchises. This court affirmed the holding of the commission as to fran-

chise rates for franchise services, but in concluding its opinion said: "For the foregoing reasons we find no error in the orders of the State Corporation Commission under review, save to the extent that they, without any investigation or consideration thereof, refuse approval of the rates filed with the commission by the plaintiff in error which apply to services within the respective corporate limits of the defendants in error which are not attempted to be fixed or affected by the franchises involved in these cases. As to the latter rates, the commission has jurisdiction under the statute of 1914, aforesaid, and it should assume such jurisdiction, make the investigation and otherwise act in respect thereto in accordance with the provisions of the 1914 statute."

The powers and duties of the commission under this decision were very plain. It was to ascertain whether or not the appellee was supplying any services within the corporate limits of the appellant which were not attempted to be fixed or affected by the franchise granted by the appellant, and if so to exercise jurisdiction over the same according to the provisions of the 1914 statute (Laws 1914, c. 340).

After the above-mentioned opinion was handed down, to-wit, on April 7, 1920, the appellee filed its petition before the State Corporation Commission in which it undertook to set out the facts of the case, and prayed that it might be permitted to withdraw in the city of Clifton Forge all service not required by the franchise granted by said city, or in lieu thereof that the commission would determine what was an adequate and sufficient service in said city and fix just and reasonable rates for same. The city of Clifton Forge appeared by counsel and filed a lengthy plea to the jurisdiction of the commission, the grounds of which will be more particularly noticed hereinafter. The appellee moved to strike out the plea. The commission heard the

case, "Upon the entire record and especially upon the said petition, the said plea, and motion to strike out, and the order of the Supreme Court of Appeals of Virginia," and struck out the plea, but refused to allow the appellee to withdraw the present service from the city of Clifton Forge. The commission thereupon ordered that so long as the appellee "renders an electric service within the city of Clifton Forge other than that required by the franchise agreement aforesaid, it shall keep on file with this commission a schedule showing its rates, tolls, charges, rules and regulations applicable to such service as required by law, and that until the further order of this commission the said company shall, so long as it renders within the city limits of the city of Clifton Forge the service now being rendered, charge uniformly therefor the rates as set out in its schedule filed with the commission on March 20, 1918. But this order shall be without prejudice to the right of the city of Clifton Forge to require the Virginia-Western Power Company to reinstate the service required of it by the franchise agreement. and at the rates therein specified for the franchise service." From this order the present appeal was taken.

The chairman of the commission, in an elaborate and able opinion copied into the record, maintained the jurisdiction of the commission over the rates for services rendered in the city which were not covered by the franchise and rightly interpreted the mandate of this court in that respect.

Under the franchise, the predecessor in title of the appellee and its successor or assigns were granted the right "to conduct, maintain and operate for a period of fifteen years from the granting of this franchise an electric light system in and for the said city and the citizens thereof. And the said company is hereby granted permission to conduct, erect and maintain in the streets and alleys of the said city

all poles and wires and other appliances and use such currents of electricity that may be necessary for it to operate its said system to light said city and supply the citizens thereof with electricity and from time to time make such repairs and alterations therein as may be considered necessary for the conduct of its business."

In consideration for the grant, the grantee agreed to pay the city eight hundred dollars, to furnish the city a specified number of arc lights at $50.00 each per annum, others in excess thereof at $40.00 each per annum, and to furnish incandescent lights to citizens at a scale of prices set forth in the franchise. As to the lights to be furnished to citizens, the franchise provides: "Upon the completion of the said electric lighting system the said company shall furnish electric lights to all the citizens of said city who shall agree to take it and equip their houses with the necessary appliances therefor at all hours from sunset until sunrise, or as much earlier and as much later as weather conditions may make it necessary."

A few months after the franchise was granted, the grantee thereof, without other consideration than has been stated, began to furnish a continuous day and night service for lighting, and also a like service for heat and power, and this service has thence hitherto been, and is now being, furnished. It was conceded before the commission that the night and day service could not be so dissociated as to permit the commission to regulate rates for the latter service while maintaining the contract rate for the former, and the city not only refused to assent to the abrogation of the day service, but insisted upon its maintenance without increase of rates. The commission was of opinion and decided that the continuous day and night service of lighting was a new service differing from and not covered by the franchise, as was also the service of heat and power, and that it had jurisdiction to fix the rates therefor. Its order, however, was "without prejudice to the rights of the city

of Clifton Forge to require the Virginia-Western Power Company to reinstate the service required of it by the franchise agreement and at the rates therein specified for the franchise service."

Nearly every question raised on this appeal was settled on the former appeal which we have neither the power nor the inclination to disturb.

In the petition for appeal it is said that three questions are involved in the case. They will be stated and numbered as in the petition:

[2]   1. "Does the franchise of April 13, 1907, and the contract of March 4, 1911, cover both night and day service in the city of Clifton Forge?"   A mere reading of the franchise hereinbefore copied would seem sufficient to show that it did not cover such service.   The grantee was only required to furnish incandescent lights "at all hours from sunset to sunrise or as much earlier and as much later as weather conditions make it necessary."   There was no undertaking for a daytime service, and the city could not demand it.   The contract of March 14, 1911, as shown on its face, was a mere compromise agreement to settle a dispute between the city and the power company as to the right of the latter, under its franchise, to charge citizens a minimum rate of one dollar for electric services.   It dealt with no other question connected with the franchise, and in no way affects the jurisdiction and power of the commission over matters not covered by the franchise of April 13, 1907; nor was it a recognition that the franchise applied to both day and night service, nor a construction by the parties of any other feature of the franchise except the right to make a minimum charge under the franchise for the franchise service.

The occupation of the streets of the city by the poles and wires of the appellee was fully warranted by the franchise hereinbefore quoted.   Sending the current along said wires

in the daytime, without objection from the city, did not subject the appellee to the franchise agreement for the night service.

As pointed out by the commission, the continuous day and night service is an inseparable service and one that is essentially different from that provided for by the franchise; hence, under the very terms of our former decision, is subject to the jurisdiction of the commission.

[3]   2. "Has the Virginia-Western Power Company, by rendering a continuous service within the city of Clifton Forge for more than ten years estopped itself from denying that the said franchise does cover all classes of service?" The poles and wires of the power company were already occupying the streets of the city under the terms of the franchise, and for the mutual benefit of the citizens and of the power company a daylight service and heat and power were furnished the citizens at the same rate at which the night service had been furnished, but there was no obligation on the power company to furnish it at that price, the city had no right to demand it, nor was the rate for that service fixed by the franchise. It is said in the opinion of the chairman of the commission that the contention that the day service is covered by the franchise contract is based "upon the theory that the voluntary rendition by the company, over a period of years, of the day service has resulted in a contract by estoppel. We can find no authority, statutory or otherwise, in support of such a contention, and cannot agree that the police power of the State, as exercised through the commission, the constitutional repository of that power, can be rendered ineffective by an estoppel *in pais*, effective, if at all, only upon the parties to the contract." We concur in the conclusion reached by the chairman.

[4, 5]   3. "Has the State Corporation Commission jurisdiction to fix any rates to be charged the citizens of the city

of Clifton Forge for any services rendered them by said company?" In the reply brief for the appellant, the contention of the appellant under this head is put thus: "The city further maintains that the General Assembly has not conferred upon the State Corporation Commission jurisdiction to consider and determine any rates to be charged for electric service rendered wholly within the corporate limits of the city."

This contention was fully considered and answered adversely to the appellant on the former hearing of this case, and is not now subject to review. *Steinman* v. *Clinchfield Coal Corp.*, 121 Va. 611, 93 S. E. 684. The city further insists "That, if the said act of 1914, as amended, be construed as giving the State Corporation Commission power to grant the right to use the streets, alleys and other public property, for the purpose of furnishing day electric service, when the city has granted no franchise for such service, said act is unconstitutional and void."

The use of the streets, alleys and other public property for the purpose of furnishing day electric service has been in existence, without objection on the part of the city, for over ten years, but no rate therefor has ever been fixed by any contract between the city and the power company. The commission is not granting a use, but fixing a rate for a use already in existence and not covered by the franchise agreement. In this it was entirely within its powers. The reserved police power of the State, and the manner of its exercise has been so fully considered and discussed in cases recently decided by this court that it is not deemed necessary to do more than refer to them. *Virginia-Western Power Co.* v. *Clifton Forge, supra; City of Richmond* v. *Ches. & Potomac Tel. Co.*, 127 Va. 612, 105 S. E. 127.

The city further contends "That the record shows that the State Corporation Commission made no investigation as to the rates which it authorized to be charged the citi-

zens of Clifton Forge and changed the same as fixed by franchise provisions without investigation and without an opportunity by the city to be heard."

This contention is fully answered by the commission as follows: "Under the provisions of the act of March 27, 1914, as amended (Acts. 1918, c. 407), schedules of rates filed with the commission by public utilities, automatically become effective thirty days after filing unless suspended by the commission upon its own motion or upon complaint of interested parties. The rates filed by the company, on March 18, 1918, are not out of line with rates approved by the commission in other communities in which the equipment in use and the operating conditions are substantially similar, and there appears to be no reason why the commission, of its own motion, should suspend the rates as filed; no complaint has been filed with the commission, and no representation made that said schedule of rates is 'unjust, unreasonable, unjustly discriminatory or preferential' and, the commission having jurisdiction of such rates, the schedule filed with the commission on March 18, 1918, is legally effective until changed in the manner prescribed by the statute."

[6, 7] The commission had no power to change franchise rates for franchise services, and did not attempt to do so. The power company had filed with the commission in March, 1918, a schedule of rates for an entirely different service. This the commission had power to change if, upon investigation, the rates were found to be unjust or unreasonable. The commission does not initiate rates, but may alter schedules filed before it and fix and order substituted therefor such rates as it may deem just and reasonable. Code, ch. 160. This it may do of its own motion, if it deems it proper, or on complaint of a proper party. In the case at bar, the commission made no investigation and no change because the rates filed "are not out of line with rates ap-

proved by the commission in other communities in which the equipment in use and the operating conditions are substantially similar and there appears to be no reason why the commission, of its own motion, should suspend the rates as filed," and there have been no complaints.   The appellant is in no wise hurt, as it may at any time hereafter go before the commission and make complaint that the rates are unjust and unreasonable, and if the complaint is well founded, it will be the duty of the commission to fix and order substituted for the rates filed such rates as shall be just and reasonable.   Code, sec. 4071.   This procedure gives the city ample opportunity to be heard as to the justness and reasonableness of the rates charged.

We find no error in the order of the State Corporation Commission, and it is accordingly affirmed.

*Affirmed.*