# Richmond

CITY OF NORFOLK v. VIRGINIA ELECTRIC AND POWER COMPANY.

November 28, 1955.

Record No. 4423.

Present, All the Justices.

The opinion states the case.

*Leonard H. Davis, F. Byron Parker* and *Henry E. Ketner,* for the appellant.

*Hunton, Williams, Gay, Moore & Powell* and *John W. Riely,* for the appellee.

SMITH, J., delivered the opinion of the court.

This is an appeal of right by the city of Norfolk from a decision and order of the State Corporation Commission entered on October 27, 1954, authorizing Virginia Electric and Power Company to file and use on and after November 1, 1954, a Purchased Gas Adjustment provision, sometimes hereafter referred to as the escalator clause,[1]

---

[1] Paragraph (A) of the escalator clause provides:

"This rate (other than the Minimum Charge) is subject to an adjustment for increases or decreases in the firm service rate at which the Company purchases natural gas. The basic rate paid by the Company for firm service as of August 1, 1954, is $2.95 per month per Mcf of Billing Demand and $0.3569 per Mcf for all gas purchased, with adjustments for variations in B.t.u. content above and below a base for B.t.u. adjustment of 1150 B.t.u. per cubic foot. On and after October 4, 1954, if any increase or decrease is made in such basic rate, or any change is made in the base for B.t.u. adjustment, the rate prescribed above shall be increased or decreased by a Purchased Gas Adjustment Factor determined as follows:

"(1) Gas purchases by the Company during a period of twelve calendar months ending within three months preceding the month of the effective date of the wholesale rate increase or decrease, less any gas delivered by the Company under

as a part of its rates, charges, rules and regulations on file with the State Corporation Commission.

For brevity the city of Norfolk will be referred to as the City; Virginia Electric and Power Company as the Company and the State Corporation Commission as the Commission.

The Company is a Virginia public service corporation engaged in the distribution of natural gas in the Hampton Roads area, in the cities of Norfolk, South Norfolk, and Newport News, and in portions of the cities of Hampton and Warwick and the counties of

---

its schedule providing for Interruptible Gas Service, shall be priced: (a) At the basic firm service rate set forth above, and (b) At the new basic firm service rate.

"(2) The difference between the amounts so determined, after appropriate adjustment for State of Virginia gross receipts and valuation taxes and for local gross receipts taxes, shall be divided by the number of hundred cubic feet of gas sold by the Company during such 12 months' period under this Schedule and all other schedules except any providing for Interruptible Gas Service. The factor so determined shall be the Purchased Gas Adjustment Factor.

"(2) The amount of each customer's monthly bill thereafter shall be approximately increased or decreased by the Purchased Gas Adjustment Factor multiplied by the number of hundreds of cubic feet billed.

"(4) Any increase or decrease in charges for gas service shall be effective for meter readings on and after the first day of the calendar month following the effective date of any increase or decrease in the rates of the Company's supplier.

"(5) Such Purchased Gas Adjustment Factor shall remain in effect until the next Purchased Gas Adjustment Factor becomes effective or until changed by law or action of the Commission."

Paragraph (B) of the escalator clause provides:

"In the event that, upon the determination of any new rate charged the Company by its supplier, the Company receives a refund of charges paid to its supplier in respect of a prior period, and Company shall make appropriate adjustments in the amounts charged to its customers under this provision, as follows:

"(1) The amount received by the Company as a refund shall be divided by the number of hundred cubic feet of gas that the Company estimates will be sold to its customers (except under its schedule providing for Interruptible Gas Service) during the same period in the next calendar year as the period in the calendar year for which such refund is applicable.

"(2) The Company will reduce by the factor so determined the Purchased Gas Adjustment Factor that would otherwise be applicable during such subsequent period.

"(3) The reduced Purchased Gas Adjustment Factor so determined shall not remain in effect beyond the time when the revenues that the Company would otherwise have received by operation of paragraph (A) have been reduced by the amount of such refund, and the Company may adjust the reduced Factor accordingly.

"(4) If any refund is applicable to a period longer than 12 months, the Company shall make appropriate adjustment in the Purchased Gas Adjustment Factor so as to refund to customers the entire amount of such refund during the 12 months beginning with the first day of the calendar month following receipt of the refund."

Norfolk and Princess Anne. The Company also provides electric service to a large portion of Virginia but this proceeding involves only its gas service.

By letter dated September 2, 1954, the Company filed with the Commission its proposed revised schedules for gas service and on September 17, 1954, the Commission suspended the effective date of the revised schedules, instituted this proceeding and ordered that notice[2] be given the public and certain designated county and city officials of a public hearing to be held on October 11, 1954. Evidence was heard on October 11, 1954, and at the request of counsel for the City the hearing was adjourned until October 25, 1954, when briefs were filed, additional evidence and argument of counsel heard, and the hearing completed.

Schedules containing provisions similar to those proposed by the Company were filed by six other natural gas distributing companies, Portsmouth Gas Company, Suffolk Gas Corporation, Virginia Gas Distribution Corporation, Roanoke Gas Company, Petersburg and Hopewell Gas Company, and Lynchburg Gas Company. All seven of these companies have the same supplier, which delivers gas di-

---

[2] The Commission's order of notice reads in part as follows:

"(2) That applicant publish notice of the filing of its application, the Commission's hearing thereon, and the investigation entered upon by the Commission once a week for two successive weeks in a newspaper or newspapers of general circulation published in the territory served by it in this State, which notice shall be in substantially the following words and figures:

"'NOTICE TO THE PUBLIC.

"'Notice is hereby given to the public that Virginia Electric and Power Company on September 2, 1954, filed with the State Corporation Commission an application for authority to establish a Purchased Gas Adjustment provision as an addition to its filed and approved schedules of rates, charges, rules and regulations. This proposal would authorize automatic adjustments in charges for gas service and would provide a method for making appropriate refunds to customers based on retroactive decreases in the wholesale cost of natural gas.

"'Notice is hereby also given that a formal public hearing on said application has been set for 10:00 A. M., on October 11, 1954, at the Courtroom of the Commission, State Office Building, Richmond, Virginia, at which time and place members of the public generally may appear and present relevant data as may be desired and be heard.

"'STATE CORPORATION COMMISSION.'

and furnish due proof of such publication at the hearing;

"(3) That applicant serve by registered mail with return receipt a copy of its proposal and of this order upon the Chairman of the Board of Supervisors and the Commonwealth's Attorney of each county in this State and the Mayor or other chief officer and the Town or City Attorney of every municipality in this State in which it provides service and file evidence of such service at the hearing * * *."

rectly to some and through Commonwealth Natural Gas Company to others. The seven cases were heard at the same time but on separate records, and all of the applications were unanimously approved by the Commission. No appeal was taken in six of the cases; the City is the sole appellant here.

In its final order of October 27, 1954, the Commission held that the escalator clause was "just and reasonable and should be approved as a part of the schedule of rates, charges, rules and regulations" of the Company; ordered that the Company be "authorized to file and use the Purchased Gas Adjustment provision as a part of its rates, charges, rules and regulations now on file with the Commission on and after November 1, 1954," and directed that the Company "notify the Accounting and Engineering Divisions of the Commission, from time to time, at least ten days prior to any changes in the wholesale price of natural gas purchased by it which would result in adjusting charges to its customers by reason of the operation" of the escalator clause. The unanimous opinion of the Commission was written by Commissioner Hooker, and Commissioner Catterall filed a separate memorandum opinion.

The City assigns six errors to the action of the Commission, but briefly stated they present only two main issues: (1) Was legally sufficient notice given the City of the proceedings in this case? (2) Did the Commission exceed or abuse its authority in approving the escalator clause?

On the issue of notice it appears that service of process upon all parties as required by the Commission's order was proved. The City complains, however, that neither the time nor the content of the notice complies with Code, § 56-237, which provides in part:

"No change shall be made in any schedule * * * except after thirty days' notice to the Commission, and to the public, in such manner as the Commission may require * * * provided that the Commission may, in particular cases, authorize or prescribe a less time in which changes may be made; * * *."

In *Board of Supervisors* v. *Commonwealth*, 186 Va. 963, 45 S. E (2d) 145, it was contended that the Commission erred in fixing date of hearing at less than thirty days from the date of filing an application for approval of the revised schedules of certain telephon rates. In holding that there was no merit in this contention we pointed out that § 4066 of Michie's Va. Code of 1942 (now Code § 56-237) provides " 'that the Commission may, in particular cases,

authorize or prescribe a less time in which changes may be made.' " 186 Va., at page 973.

Moreover, it is amply clear in the instant case that if in fact there were any defect in the notice of hearing, the City waived such defect by its appearance and participation in the proceedings. When the first hearing was convened on October 11, 1954, twenty-four days after the Commission ordered that the notice be served and published, counsel for the City moved for a continuance, stating that the hearing involved a "highly technical rate problem and the plan as proposed by the Applicant is a departure from the policy that the Commission has followed since its inception in 1902 in the making of rates. The City of Norfolk may have some testimony to offer and I don't know at this time whether they will or not, but the purpose of this motion is to ask that the hearing be continued until some two weeks after Mr. Moore [counsel for the company] puts in his testimony so that we can study the record and offer some testimony, if deciding to do so, and I think that will be conducive to a better record."

The Company called its Treasurer, Mr. Ratcliffe, who explained the operation of the escalator clause and presented certain statistical material requested by the staff of the Commission. After cross examination by counsel for the City and for the Commission the hearing was continued as requested by the City until October 25, 1954. On that day, which was more than thirty days after the publication of notice, the hearing was reconvened and Mr. Ratcliffe presented some additional evidence on direct examination and was again cross examined. The case was then argued and briefs filed on behalf of both parties. The record does not show that any objection was made to the sufficiency of the notice at any time during the hearing. Hence, it does not appear that the City was uninformed of the subject matter in controversy or that it was prejudiced in any way because of the alleged defects in the notice of hearing.

A clear understanding of the City's several contentions that the Commission exceeded its authority in approving the Company's proposed escalator clause, requires that the purpose and effect of that provision be explained in some detail.

The Company purchases its supply of natural gas from Commonwealth Natural Gas Corporation, hereafter referred to as Commonwealth, which in turn purchases the gas from Atlantic Seaboard Corporation and transports it to the Company's facilities in the

Hampton Roads area. Both the Company and Commonwealth are Virginia public service corporations and therefore subject to the jurisdiction of the Commission. Atlantic Seaboard Corporation, on the other hand, is not subject to the jurisdiction of the Virginia Commission, but operates an interstate natural gas pipe line and is therefore a "Natural Gas Company" subject to exclusive regulation by the Federal Power Commission under the Natural Gas Act. 15 U. S. C. § 717 (a). Hence, the gas ultimately consumed in the Hampton Roads area is subject to regulation by two commissions whose statutory schemes for rate regulation differ markedly.

Under the Natural Gas Act, a natural gas company, such as Atlantic Seaboard Corporation, must keep on file with the Federal Power Commission schedules of all rates and charges for sales of gas and when a new rate schedule is filed with that commission, it may enter upon a hearing as to the lawfulness of the proposed new rates and, pending decision, may suspend the operation of the filed rates for five months. At the end of this five month period, if no final determination has been made, the filed rates go into effect. Upon final determination at an indeterminate future date, if the approved rates are lower than the filed rates, the Federal Power Commission is authorized to order the natural gas company to refund to its customers the difference between the rates actually charged and the approved lower rates. 15 U. S. C. § 717 (c).

On the other hand, there is no provision in the Virginia statutes under which the Commission has the authority to condemn rates retroactively once legally established. *Commonwealth* v. *Old Dominion Power Co.,* 184 Va. 6, 34 S. E. (2d) 364.

Since natural gas was first introduced into the Hampton Roads area in the spring of 1951, there have been three changes in the rates charged the Company by its supplier, each of which was occasioned by the action of the Federal Power Commission, and at the time of the hearing a fourth change was anticipated to become effective November 1, 1954. It also appears that the Company has at times received refunds as a result of changes in the rates which it had paid its supplier. The distributing company may oppose rate changes before the Federal Power Commission, but neither it nor the State Corporation Commission has any control over the rates fixed by the federal commission. Hence, the interstate supplier has an absolute monopoly with the price fixed by federal authority.

While the earnings of public utilities fluctuate, there is a maximum and minimum limit within which rates should be confined to avoid becoming unreasonable. In order to keep the rate of return within reasonable limits all utilities are under constant supervision and investigation by the accounting and engineering departments of the Commission. In this connection, Commissioner Catterall said: " * * * the Commission employs a competent staff of trained accountants who spend their full time making investigations for the Commission and reports to the Commission. The Accounting Division receives, checks and analyzes the annual reports that utilities are required to file with the Commission. From other sources, such as statistical data published by federal agencies and reports of companies to their stockholders, it obtains additional information. The bulk of its work consists in constantly traveling throughout the length and breadth of Virginia to examine the original books, records and vouchers of the utilities."

In the instant case the cost of purchased gas amounts to about 50% of the Company's operating expenses. Therefore any change in this fixed cost, which the Company must pay, and over which it has no control, affects vitally its rate of return. The increases, decreases, and refunds under the federal law apply directly to the charges of Atlantic Seaboard to Commonwealth. Under an escalator clause approved by the Commission in the filed schedules of Commonwealth, effective June 15, 1954, similar to the one now proposed by the Company, Commonwealth passes these fluctuations in gas prices directly on to the Company.

In order to avoid the disruptive effects of constant fluctuations in its wholesale cost of natural gas, which is fixed by federal authority and beyond its control, the Company proposed and the Commission approved the escalator clause now under attack by the City. This clause, which is set out in full in the margin, falls into two parts. The first relates to the treatment of changes—up or down—in the cost of purchased gas to the Company; the second relates to the reduction of rates as a result of refunds received by the Company when certain changes occur in its wholesale cost of gas.

The purpose of the first part of the escalator clause is to increase or decrease the revenues of the Company by exactly the amount of its increased or decreased costs of purchased gas. When the cost of gas is increased or decreased, the total gas purchases for the past year are priced at the basic rates and at the new rates, and the dif-

ference determined. The difference is next adjusted for Virginia gross receipts taxes and as adjusted, the difference is divided by the quantity of gas sold during the year. The result is a factor which, as appropriate, is added to or subtracted from the basic rate for gas in the future. Thus, the net income of the Company is unchanged by the operation of this part of the escalator clause. The consumers of gas are required to pay the increase in the cost of gas, if an increase occurs, and they are given the benefit of a decrease in such cost when a decrease occurs.

Under the second part of the escalator clause the Company is required to reduce its rates in the exact amount of refunds received by it from its supplier. This refund is accumulated during the period between the end of the Federal Power Commission's five month suspension period and the decision of that Commission reducing the wholesale cost of gas paid by the Company. The reduction in rates charged consumers becomes effective in the same period of the year following the receipt of the refund as the period in which the refund is accumulated. This is accomplished by estimating the number of hundreds of cubic feet of gas to be sold during the period, dividing the amount of the refund by the number so determined and reducing the rate for gas per hundred cubic feet to be paid by the customer by the factor so determined for the period. The same period of the year is used because of the varying use of gas made by different consumers depending on the weather. Consequently, a very small number of consumers who paid the higher rates may not get the benefit of the refund, an example of which is when the consumer moves out of the Company's distributing area before the reduction in rates becomes effective. However, as found by the Commission, "to require individual refunds would be impracticable and expensive; it might cost as much as the amount of the refund. The course proposed as to refunds will benefit customers generally and is the only workable plan."

The escalator clause is, therefore, highly remedial; it confers no benefit on the stockholders of the Company except to help the avoidance of unjustified loss, and on the other hand, it likewise deprives them of the possibility of keeping an unjustified gain. It requires that consumers pay the increased cost of gas when incurred by the Company and gives them the immediate benefit of reductions in that cost. In addition, it gives the consumer the benefit of any refund the Company receives by reducing the future charges made

for the gas for the same length and corresponding period of time that the increased charge was in effect.

The City's objection to the escalator clause is not that in its operation the Company will gain an inequitable advantage, but rather that: (1) the Commission has transcended the limits of the legislative discretion vested in it, and (2) automatic increases in the charge to consumers when the cost of gas increases are a violation of due process of law since a public hearing is not provided before each increase becomes effective.

The Commission has no inherent power simply because it was created by the Virginia Constitution; and therefore its jurisdiction must be found either in constitutional grants or in statutes which do not contravene that document. *Commonwealth* v. *Old Dominion Power Co.*, 184 Va. 6, 34 S. E. (2d) 364; *Richmond* v. *Chesapeake, etc., Tel. Co.*, 127 Va. 612, 105 S. E. 127.

Pursuant to the authority vested in it by § 156 (c) of the Constitution, the General Assembly has enacted several statutes which confer jurisdiction on the Commission to fix the rates and charges of public utilities operating in Virginia. "In performing the duty of fixing reasonable and just rates for a public service corporation providing heat, light and power service, the Commission exercises a legislative function delegated to it by the legislature of Virginia by Code, § 56-235, by virtue of § 156 (c) of the Constitution of Virginia. The power delegated by the legislature has the same attributes as the power directly delegated by the Constitution to the Commission for the regulation of 'transportation and transmission companies' under § 156 of the Constitution." *Board of Supervisors* v. *Vepco*, 196 Va. 1102, 1109, 87 S. E. (2d) 139.

Sections 156(f) and 156(g) of the Constitution provide that upon an appeal to this court from the action of the Commission, the order attacked must be regarded "as prima facie just, reasonable and correct" and that our function is to review the Commission's action. Hence, the rates and regulations promulgated by the Commission in the exercise of its legislative function may not be set aside by this court unless it clearly appears that such action contravenes the Constitution or statutes of the United States, the Constitution of Virginia or the statutes by which the General Assembly has delegated such legislative power to the Commission. *Norfolk* v. *C. & P. Tel. Co.*, 192 Va. 292, 64 S. E. (2d) 772; *C. & P. Tel Co.* v. *Commonwealth*, 147 Va. 43, 136 S. E. 575.

■ The statutes primarily involved in our determination of whether the Commission has the power to authorize the Company to include the escalator clause in its filed schedules of rates, rules and regulations are § 56-232 through § 56-245, and especially Code, §§ 56-235,[3] 56-236,[4] and 56-237.[5]

Under Code, § 56-236 every public utility is required to keep on file with the Commission and open to public inspection all schedules of its rates and charges and "as a part of such schedules, copies of all rules and regulations that in any manner affect the rates charged or to be charged." When this requirement of Code, § 56-236 is read in connection with Code, §§ 56-235 and 56-237, it is manifest that the Commission has the power, upon investigation and due notice to the public, to change, fix and order substituted for any filed schedule, rate, rule or regulation found to be "unjust, unreasonable, insufficient or unjustly discriminatory etc.," (§ 56-235) any other schedules, rates, rules or regulations that in "any manner affect the rates charged or to be charged," (§ 56-236) provided they are found to be "just and reasonable" (§ 56-235). This power of the Commission is in no wise limited or restricted by reason of additional powers granted it in other sections of the Code. See Code, § 56-40 (authorizes revised rate schedules to become effective "without notice when the proposed revision effects no increases"); § 56-238 (au-

---

[3] Code, § 56-235 provides:

"If upon investigation the rates, tolls, charges, schedules, or joint rates of any public utility operating in this State shall be found to be unjust, unreasonable, insufficient or unjustly discriminatory or to be preferential or otherwise in violation of any of the provisions of law, the State Corporation Commission shall have power to fix and order substituted therefor such rate or rates, tolls, charges or schedules as shall be just and reasonable."

[4] Code, § 56-236 provides:

"Every public utility shall be required to file with the Commission and to keep open to public inspection schedules showing rates and charges, either for itself, or joint rates and charges between itself and any other public utility. Every public utility shall file with, and as a part of, such schedules, copies of all rules and regulations that in any manner affect the rates charged or to be charged."

[5] Code, § 56-237, as amended by Acts 1954, p. 373, c. 298, provides:

"No change shall be made in any schedule filed pursuant to the preceding section, including schedules of joint rates, except after thirty days' notice to the Commission, and to the public, in such manner as the Commission may require, and all such changed rates, tolls, charges, rules, and regulations shall be plainly indicated upon existing schedules or by filing new schedules in lieu thereof not less than thirty days prior to the time the same are to take effect; provided, that the Commission may, in particular cases, authorize or prescribe a less time in which changes may be made; and provided further that, in the case of water companies, the notice to the public shall set forth the proposed rates and charges."

thorizes the suspension of proposed rates); § 56-242 (authorizes temporary reductions in rates); § 56-245 (authorizes temporary increases in rates).

Hence, the power of the Commission is not limited to the mere change of a particular rate that the public must pay for the service rendered by a public utility, but it has the power to change, under certain conditions, any part of a filed schedule, rate, rule or regulation that in any manner affects the rates charged or to be charged. The General Assembly has, as stated by Commissioner Catterall in his memorandum opinion, "recognized that rate schedules consist not merely of lists of rates in dollars and cents, but that they customarily include provisions that will in various ways affect the rates charged at the time of filing or to be charged thereafter."

The proposed escalator clause is nothing more or less than a fixed rule under which future rates to be charged the public are determined. It is simply an addition of a mathematical formula to the filed schedules of the Company under which the rates and charges fluctuate as the wholesale cost of gas to the Company fluctuates. Hence, the resulting rates under the escalator clause are as firmly fixed as if they were stated in terms of money.

■ The Commission does not have the power to redetermine rates for a past period at a different level from those actually charged in accordance with filed schedules because that would be to make retroactive rates. *Commonwealth* v. *Old Dominion Power Co., supra; Mathieson Alkali Works* v. *Norfolk, etc., R. Co.,* 147 Va. 426, 137 S. E. 608. In the Old Dominion Power Company case, we said that "the constitutional mandate of section 156, subsection (b), that 'the commission shall, from time to time, *prescribe*, and enforce against such companies, * * * such rates, charges, * * *' (italics supplied), clearly indicates that the action of the Commission shall have a prospective rather than a retrospective effect. According to Webster's International Dictionary, 2d Ed., 'prescribe' means: 'To lay down authoritatively as a guide, direction, or rule of action.'" 184 Va., at page 15.

In approving the escalator clause the Commission did not fix rates retroactively, but on the contrary, it authorized and prescribed a fixed mathematical formula to be inserted in the schedules of the Company which will serve as a "guide, direction, or rule of action" for determining future rates.

■ The City next contends that the escalator clause results in a

denial of procedural due process of law to the consumers because there is no public notice and hearing on each occasion when the actual rate is increased. It also contends that notice of each increase in rates under the escalator clause is required by Code, § 56-237. There is no merit in these contentions.

In *Dan River Mills, Inc.* v. *Unemployment Compensation Commission*, 195 Va. 997, 1002, 81 S. E. (2d) 620, we said: "It is well settled that where the construction of a statute has been uniform for many years in the administrative practice, and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts."

Both in Virginia and in several other States, provisions similar to the escalator clause approved by the Commission have been inserted in the filed schedules of a number of public utilities. In this respect Commissioner Hooker said:

"The Commission has for many years approved rates for larger consumers of electric power that are based on fuel clauses. The operation of those clauses results in increases or decreases in rates as the cost of fuel increases or decreases. No objection has ever been made to such rates despite the long period of their effectiveness. They cannot be distinguished in effect from the escalator provision proposed here. Electric rates with fuel clauses were considered and accepted by this Commission more than thirty years ago. [Citing *In re Virginia Railway and Power Co.*, 1921 S. C. C. 60, 70; *In re Lynchburg Traction and Light Co.*, 1921 S. C. C. 137, 146.]

"Electric rates with fuel clauses are general throughout the industry. [Citing numerous decisions of other commissions.]

"Although Escalator Clauses in gas rates do not have such a long history in Virginia, this case is by no means without precedent. Thus the Commission has authorized Escalator Clauses for two smaller gas utilities distributing propane gas. It approved an Escalator Clause for Washington Gas Light Company quite similar to that proposed by this Company. That approval was given on June 30, 1954, and similar approval was given by the Maryland and District of Columbia Commissions for the same company."

Commissioner Hooker further pointed out that in other States escalator clauses in gas rates have met with approval: "The legality and propriety of such clauses were considered at length in 1953 by the New York Public Service Commission in a proceeding covering the large gas distributors in the New York City area, and that Com-

mission approved such clauses. *Re Brooklyn Borough Gas Co.*, 100 P. U. R. N. S. 271 (1953). Other Commissions have adopted the same course. *Re Southern California Gas Co.*, 99 P. U. R. N. S. 272 (Calif. P. U. C. 1952); *Re South Jersey Gas Co.*, 96 P. U. R. N. S. 71 (N. J. Bd. P. U. C. 1952); *Re Piedmont Gas Co.*, 71 P. U. R. N. S. 19 (N. C. U. C. 1947)."

Code, § 56-237 provides that "No change shall be made in any schedule filed pursuant to the preceding section" without due notice to the public. The preceding section, 56-236, as heretofore stated, requires every utility to keep on file with the Commission its schedules of rates and as a part of such schedules, "copies of all rules and regulations that in any manner affect the rates charged or to be charged." When these two sections of the Code are thus read together it is clear that notice is not required on each occasion there is a change in the ratepayers' bills, but that notice is required for every change in the filed schedules which are the underlying bases for the computation of those bills. This requirement gives the ratepayer ample opportunity to be heard as to the just and reasonable character of the rates charged or to be charged. Furthermore, any aggrieved ratepayer may at any time go before the Commission and make complaint that the schedules or rates of the Company are unjust and unreasonable. If it appears that the complaint is well founded, it will be the duty of the Commission to change, fix and order substituted for the filed schedules or rates such schedules or rates as shall be just and reasonable. *Clifton Forge* v. *Va.-West. Power Co.*, 129 Va. 377, 106 S. E. 400.

In the instant case there was sufficient notice to the public that the Commission would hold a formal hearing on the application of the Company to determine whether it was just and reasonable to insert the escalator clause into its filed schedules. The City appeared and participated in the proceedings, and after an investigation by the Commission and a full hearing, the Commission found as a fact that the proposed escalator clause was "just and reasonable," a finding which the record does not warrant us in reversing. Consequently, the requirements of procedural due process have been fulfilled in this case. See, *e. g., Railroad Commission of California* v. *Pacific Gas and Elec. Co.*, 302 U. S. 388, 58 S. Ct. 334, 82 L. ed. 319; *Ohio Bell Telephone Co.* v. *Public Utilities Comm.*, 301 U. S. 292, 57 S. Ct. 724, 81 L. ed. 1093.

We have carefully examined all of the City's contentions in the

light of the record, and hold that the Commission had the authority to approve the escalator clause now before us and to authorize its insertion in the schedules of rates, charges, rules and regulations of the Company; that the notice of hearing was sufficient; and that in its operation the escalator clause violates no constitutional or statutory limitations.

Consequently, the order appealed from is affirmed.

*Affirmed.*