227 S.E.2d 593 (1976)
30 N.C. App. 459
STATE of North Carolina ex rel. UTILITIES COMMISSION and Duke Power Company, Applicant,
v.
Rufus L. EDMISTEN, Attorney General.
No. 7610UC209.
Court of Appeals of North Carolina.
August 18, 1976.
*597 Atty. Gen. Rufus L. Edmisten by Sp. Deputy Atty. Gen. Robert P. Gruber, Raleigh, for appellant.
Com'n Atty. Edward B. Hipp and Asst. Com'n Atty. John R. Molm, Raleigh, for N. C. Utilities Com'n, appellee.
Steve C. Griffith, Jr., George W. Ferguson, Jr., and Kennedy, Covington, Lobdell & Hickmen by Clarence W. Walker and John M. Murchison, Jr., Charlotte, for Duke Power Co., appellee.
BRITT, Judge.
The Attorney General challenges that part of the Commission order allowing Duke to impose a temporary surcharge and states his contentions thusly:
"I. The Commission order approving a temporary surcharge allowing Duke to recover so-called unbilled revenues of $18,503,555 for fuel costs incurred in July and August, 1975 was illegal in that it fixed rates retroactively so as to make them collectible for past service.
"II. The Utilities Commission lacks the statutory authority to approve a temporary surcharge for the recovery of specific cost items experienced by a utility in the rendering of past service."
To understand the questions presented by this appeal, it is necessary to review briefly the history of the fuel adjustment clauses which the Commission has authorized Duke to impose. The problem sought to be solved dates back to 1973 when a worldwide energy crises brought about tremendous increases in the cost of fossil fuels, particularly coal which is used extensively in this country in the generation of electricity.
On 30 November 1973 Duke filed with the Commission an application (Docket E-7, Sub. 161) for authority to adjust its retail electric rates and charges by the addition of a coal adjustment clause to be rendered on monthly bills on and after 1 January 1974. At that time Duke had pending an application (Docket E-7, Sub. 159) for a general rate increase.
On 19 December 1973, in an order based on affidavits and other documentary evidence, the Commission consolidated the two applications and, pending a hearing, authorized the requested coal adjustment clause. The order provided that the clause would not be operative unless and until coal costs increased above the October 1973 level, and included the following:
"1. That effective on bills rendered on and after January 19, 1974 for service rendered on and after December 19, 1973 with respect to coal burned on and after November 1, 1973, the Applicant, Duke Power Company, is authorized and permitted to put into effect the coal cost adjustment clause attached to its application as Exhibit B.
"2. That Duke Power Company will report to the Commission on a monthly basis the amount of the fuel cost adjustment and the factors and computations used in its derivation."
*598 On 17 July 1974 this court dismissed an appeal by the Attorney General from the 19 December 1973 order on the ground that the order was interlocutory. See opinion reported in 22 N.C.App. 497, 206 S.E.2d 507; aff'd, 285 N.C. 759, 209 S.E.2d 282 (1974).
On 10 October 1974, following lengthy hearings, the Commission entered a final order in Docket No. E-7, Sub. 161, in which it made pertinent findings of fact and conclusions of law and ordered (1) that the fossil fuel adjustment clause become effective 1 November 1974, (2) that the coal clause remain in effect until 1 November 1974, and (3) that Duke file with the Commission each month a complete fossil fuel adjustment clause memorandum.
The Attorney General and other intervenors appealed from the order, attacking the validity of the fuel adjustment clause. In an opinion filed 6 August 1975, and reported in 26 N.C.App. 662, 217 S.E.2d 201, this court upheld the validity of the fuel clause. A fuller account of the findings and conclusions of the Commission is set forth in that opinion.

SCOPE OF REVIEW
While our decision in this case does not rest on technical rules of procedure, we feel constrained to call attention to Rule 10 of the New North Carolina Rules of Appellate Procedure, 287 N.C. 671 (1975), which became effective with respect to all appeals taken from orders and judgments of trial tribunals, including the Utilities Commission, in which notice of appeal was given on and after 1 July 1975. Since the orders appealed from in the instant case were entered subsequent to that date, the new rules apply.
Rule 10(a) provides:

"Function in Limiting Scope of Review. Except as otherwise provided in this Rule 10, the scope of review on appeal is confined to a consideration of those exceptions set out and made the basis of assignments of error in the record on appeal in accordance with this Rule 10. No exception not so set out may be made the basis of an assignment of error; and no exception so set out which is not made the basis of an assignment of error may be considered on appeal. Provided, that upon any appeal duly taken from a final judgment any party to the appeal may present for review, by properly raising them in his brief, the questions whether the judgment is supported by the verdict or by the findings of fact and conclusions of law, whether the court had jurisdiction of the subject matter, and whether a criminal charge is sufficient in law, notwithstanding the absence of exceptions or assignments of error in the record on appeal."
With respect to exceptions to findings of fact and conclusions of law, the last sentence of Rule 10(b)(2) provides: "A separate exception shall be set out to the making or omission of each finding of fact or conclusion of law which is to be assigned as error." The drafting committee's commentary regarding this sentence, Ibid, p. 702, states: "The last sentence carries forward an established rule of decision which has prohibited `broadside exceptions' to multiple findings or conclusions. Logan v. Sprinkle, 256 N.C. 41, 123 S.E.2d 209 (1961)."
All of the Attorney General's exceptions and assignments of error are to the signing and entry of the orders appealed from, with reasons given as to why the orders are invalid. In his assignment No. 5 (Ex. No. 3) as set forth in his grouping of exceptions and assignments, he alludes to "certain Findings and Conclusions" including one which he summarizes, and states that the findings and conclusions (presumably referring to all of them) are unsupported by competent, material and substantial evidence in view of the entire record as submitted, "and said Order is therefore arbitrary and capricious". Where the orders are set out in the record on appeal, no exception is noted to any finding of fact or conclusion of law.
We hold that there is no proper exception to the findings of fact and conclusions of law set forth in the orders, therefore, the findings and conclusions are presumed to be *599 correct. Our review is limited to the questions whether the orders are supported by the findings of fact and conclusions of law.

MERITS OF THE CASE
The main thrust of the Attorney General's contention is that the part of the 27 August 1975 order allowing Duke to apply a temporary surcharge to collect its increased fuel costs for July and August of 1975 constitutes retroactive rate fixing which is not authorized by our statutes and has been declared illegal by our Supreme Court.
Specifically, the Attorney General argues that one of the primary statutes giving the Commission the authority to fix rates is G.S. 62-136, and that subsection (a) of that statute authorizes a fixing of rates "to be thereafter observed and in force" (emphasis ours). He further argues that in Utilities Commission v. City of Durham, 282 N.C. 308, 318, 193 S.E.2d 95, 102 (1972), the Supreme Court declared that "the Commission may not fix rates retroactively so as to make them collectible for past service."
The Commission argues that there is a difference between rate fixing and approving a fuel clause designed to recover previously incurred costs. We find this argument persuasive.
Rate fixing contemplates considerably more than altering one component in the rate structure of a public utility. The catchline of G.S. 62-133 is "How rates fixed". The statute then provides that in fixing rates for certain public utilities (including power companies), the Commission, among other things, shall ascertain the fair value of the public utility's property used and useful in providing the service rendered to the public within this State, estimate the utility's revenue under present and proposed rates, ascertain the utility's reasonable operating expenses, and fix a rate of return on the fair value of the property as will enable the utility by sound management to produce a fair profit for its stockholders.
While the cost of fuel for its generating plants in undoubtedly a major expense item for Duke and other power companies, such cost is only one of many factors that G.S. 62-133 requires the Commission to consider in fixing rates. In City of Norfolk v. Virginia Electric and Power Company, 197 Va. 505, 90 S.E.2d 140 (1955), the Virginia Supreme Court of Appeals, in approving a fuel clause (referred to by that court as an escalator clause) for a power company under its jurisdiction, recognized a distinction between rate fixing and approving a fuel clause. We quote from the opinion:
"[T]he escalator clause is, therefore, highly remedial; it confers no benefit on the stockholders of the company except to help the avoidance of unjustified loss, and . . . it likewise deprives them of the possibility of keeping an unjustified gain."

* * * * * *
"In approving the escalator clause the Commission did not fix rates retroactively, but on the contrary, it authorized and prescribed a fixed mathematical formula to be inserted in the schedules of the Company which will serve as a `guide, direction, or rule of action' for determining future rates." 90 S.E.2d at 146-48.
We think G.S. 62-136(a) refers to rate fixing as envisioned by G.S. 62-133. We also think the declaration by our Supreme Court in Utilities Commission v. City of Durham, supra, quoted above, was made in the context of a general rate fixing case and is not controlling in this case.
On 30 November 1973 when Duke applied to the Commission for authority to implement an automatic coal adjustment clause (also referred to herein as a fuel clause), it was operating within a rate structure that had been determined by the Commission pursuant to G.S. 62-133. That structure included an item of .5035 cent per KWH for cost of fossil fuel. The order of the Commission entered 19 December 1973 authorizing Duke to implement a fuel clause, which order is the root of the question presented by this appeal, did not "fix rates" but was only a means to make the .5035 cent per KWH for cost of fuel a workable figure from the standpoint of Duke and its customers.
*600 By the enactment of Section 8 of Chapter 243 of the 1975 Session Laws [G.S. 62-134(e) quoted above], the General Assembly indicated an intent that the cost of fuel used in the generating of electricity by a public utility should be treated as a factor separate from all others in the utility's rate structure. The new statute expressly states that a proceeding under it shall not be considered a general rate case. It streamlines the procedure for considering an application to change the cost of fuel component and requires the Commission to rule on the application within 90 days after it is filed.
The record discloses that after October 1973 Duke could not determine the accurate cost of fuel per KWH for a given month until two months later, therefore, bills rendered in January 1974 included increased fuel costs for November 1973; that this caused a two months' lag in recovering the increased fuel costs, thereby necessitating the surcharge in question to collect for July and August 1975.
While the 19 December 1973 and 10 October 1974 orders might have been clearer in their provisions that Duke's recovery of increased fuel costs would relate back to include November and December of 1973, a liberal construction of the orders leads us to conclude that they were sufficient to accomplish that purpose.
We hold that the Commission did not exceed its authority in entering the orders appealed from.
Affirmed.
HEDRICK, J., concurs.
MARTIN, J., dissents.
MARTIN, Judge (dissenting).
In fixing rates to be charged by a public utility, the Commission is exercising a function of the legislative branch of the government, and has only that power conferred upon it by G.S. Chapter 62. Utilities Commission v. General Telephone Company of Southeast, 281 N.C. 318, 336, 189 S.E.2d 705 (1972).
G.S. 62-130(a) authorizes the Commission to fix rates, and G.S. 62-130(d) authorizes the Commission to revise and change rates from time to time as circumstances may require. G.S. 62-136(a) authorizes the Commission to investigate existing rates on its own motion or upon complaint of anyone directly interested, and if the rates are found to be unjust and unreasonable, the Commission has the authority to determine the rates to be thereafter observed and in force. In investigating rates and setting rates for the future under the broad authority of G.S. 62-136(a), the legislature has given the Commission specific procedural and substantive guidelines to follow in fixing rates. G.S. 62-133 empowers the Commission to conduct a general rate hearing if the utility seeks an increase in rates which affects the entire rate structure of the utility. G.S. 62-73 and 74 allows a proceeding when the utility, a customer, or the Commission wishes to investigate a single rate or small part of the rate structure. Utilities Commission v. Carolina Power and Light Company, 250 N.C. 421, 109 S.E.2d 253 (1959); Utilities Commission v. Tidewater Natural Gas Company, 259 N.C. 558, 131 S.E.2d 303 (1963). G.S. 62-134(e) provides for an investigation of a rate increase application based solely upon the increased cost of fuel. G.S. 62-137 requires the Commission to declare the scope of the hearing.
This Court has recently approved the use of a fuel escalator clause to set rates, stating that G.S. 62-3(24), which defines "rate" is worded in such a broad manner as to encompass the use of a formula. Utilities Commission v. Edmisten, Attorney General, 26 N.C.App. 662, 217 S.E.2d 201 (1975), I dissented in that case, and the question presented has not yet been decided by our Supreme Court. If it is assumed that a formula implemented under G.S. 62-3(24) is a valid rate making device, then G.S. 62-3(24) and the formula are subject to the limitations of G.S. 62-136(a).
When the statutes are viewed in harmony, and each is given its proper effect, it appears that whether rates are fixed under G.S. 62-133, G.S. 62-73, G.S. 62-74, G.S. *601 62-134(e), or G.S. 62-3(24) investigation and ordered change must be made under the umbrella of the authority given by G.S. 62-136(a) and G.S. 62-130.
A rate is fixed or allowed when it becomes effective pursuant to Chapter 62, G.S. 62-130(a). And rates must be fixed prospectively from their effective date. G.S. 62-136(a) provides that the Commission shall determine rates "to be thereafter observed and in force". This statute, which controls all rates set under G.S. Chapter 62, allows the Commission to set for a utility a reasonable rate for service to be rendered in the immediate future. The Commission may not fix rates retroactively so as to make them collectable for past service. Utilities Commission v. City of Durham, 282 N.C. 308, 318, 193 S.E.2d 95 (1972); Utilities Commission v. Morgan, 277 N.C. 255, 267, 177 S.E.2d 405 (1970). See Public Utilities Commission v. United Fuel Gas Co., 317 U.S. 456, 464, 63 S.Ct. 369, 87 L.Ed. 396.
In a general rate case conducted pursuant to G.S. 62-133, a utility's historical costs and earnings during a proscribed test period must be considered. The test period operating experience of the utility must be adjusted pro forma to account for all known changes and conditions affecting revenues and expenses so that the test period will accurately reflect the immediate future. Thus specific expense items which occurred in the past are not calculated so that they may be actually recovered by future rates. They are calculated only to be used as the most reasonable estimate of what the company may anticipate in the future.
The use of historical operating data to set rates for the future is not limited to setting rates under G.S. 62-133 when a test period is used. It applies to setting rates under any other proceeding or rate making device used in North Carolina. These principles apply to the use of an automatic fuel adjustment clause as well as to nonautomatic procedures.
Thus, a fuel clause is a prospective deviceit sets rates for the future. The fuel clause applied in any given month, could not be applied retroactively to collect past fuel costs, incurred in rendering service prior to the effective date of the fuel clause, although billings rendered under the fuel clause were based on actual past costs. Billings under the fuel clause were intended to collect fuel costs in the month billings were rendered and the costs two months prior to the billings were used in the billing month as a proxy for the actual costs in the most current months. This procedure is the same in principle as applied in setting rates under G.S. 62-133.
When the fuel clause or coal clause was initially approved on December 19, 1973, as a result of Duke's application filed on November 30, 1973, legally it had to operate prospectively on and after December 19, 1973. Although burned coal costs on and after November 1, 1973 were used as the best estimate of or cost proxy for billings on and after January 19, 1974, Duke could not be allowed to recover its burned costs prior to that date. To have allowed the coal clause to recover coal costs burned on and after November 1, 1973, would have been the clearest example of retroactive rate making. Utilities Commission v. Morgan, Attorney General, supra. G.S. 62-136(a). The November, 1973 burned costs were simply used as the best estimate of costs to be billed from January 19, 1974 to February 19, 1974. Since the coal clause at its inception was prospective, no legally recoverable two months lag arose.
The critical factor is that the $18,503,555 in fuel costs were costs incurred in rendering service prior to the effective date of the Commission order of August 27, 1975, and the Commission acted in excess of its statutory authority by allowing these costs to be recovered retroactively. The surcharge is an illegal rate or charge for services rendered in the past. The Commission had no authority to go back and set rates for services rendered in July and August, 1975, in order to recover unbilled revenues. G.S. 62-136(a), Utilities Commission v. Morgan, Attorney General, supra.
G.S. 62-134(e) only allows for recovery of increased cost of fuel used in the generation or production of electric power. There is no *602 increased cost of fuel on and after September 1, 1975, involved in the costs being recovered under the temporary surcharge. These are past non-recurring expenses incurred for past service prior to the issuance of the Commission's order in this case. Further, G.S. 62-134(e) plainly prohibits attempts to carry the old fuel clause forward past September 1, 1975, and this is precisely what the Commission has attempted to do through its approval of the temporary surcharge. The Commission totally lacks statutory authority or jurisdiction to approve the temporary surcharge.
I vote to reverse.